# WHEELING.

## REX *v.* CREEL *et al.*

Submitted August 11, 1882—Decided November 3, 1883.

1. If, at the time a conveyance with general warranty is made, the land conveyed is actually in the possession of a third party holding the same under a paramount title, this amounts to an eviction *eo instanti.* (p. 375.)

2. Before an action will lie for a breach of covenant of general warranty of title to land, there must be an ouster under a paramount title. (p. 375.)

3. Such ouster may be established by showing that at the time the covenant was made, a third person was in possession of the land holding under a paramount title. (p. 375.)

4. A covenant, that the grantor will warrant and defend the title against the claims of all persons whomsoever, is a personal covenant. (p. 376.)

5. At common law, where the ancestor made a covenant of general warranty expressly binding "his heirs," the heir might be sued for breach of such covenant; but the judgment would have to be satisfied out of the lands descended to him. (p. 377.)

6. Since the enactment of chapter 86 of the Code suit in such case would have to be brought in equity, and would not lie at law, unless redress could not be given in a suit in equity. (p. 380.)

7. Now under said chapter 86 a suit cannot be maintained at law against the heirs upon such a covenant of general warranty of title. (p. 380.)

The facts of the case are fully stated in the opinion of the Court.

*James Hutchinson* and *W. L. Cole* for plaintiff in error.

*John A. Hutchinson* for defendants in error.

JOHNSON, PRESIDENT:

This was an action of covenant brought in the circuit court of Wood county in 1879 by Franklin Rex against the heirs of Bushrod W. Creel, deceased, claiming fifty thousand dollars damages for breach of general warranty of title. The defendants demurred to the declaration and each count thereof, in which demurrer the plaintiff joined. On the 18th day of October, 1879, the court sustained the demurrer and remanded the case to rules with leave to amend the declaration. On the 25th day of August, 1881, the record states: "This day came the parties by their attorneys, and the plaintiff having failed to amend his declaration at rules according to leave given him by a former order in this case, on motion of the defendants so much of the former order, as remanded this case to rules, is set aside, and the plaintiff not desiring further leave to amend his said declaration, on motion of the defendants it is ordered, that this action be and the same is dismissed, and that the defendants recover of the plaintiff their costs about their defence in this behalf expended."

To this order, and the former order sustaining the demurrer to the declaration the plaintiff obtained a writ of error.

Two grounds are insisted upon here, to show that the demurrer was properly sustained; first, that the declaration does not allege, that the defendants had been evicted by a judgment of the court; and second, that this action cannot be maintained against the heirs at law of said B. W. Creel. The declaration alleges, that at the time the deed containing the general warranty of title was made, certain persons naming them were in possession of the land conveyed by the deed, holding the same under a paramount title. Is this allegation sufficient to show, that the covenant was broken; or was it necessary to allege that the plaintiff had been evicted by the judgment of a court? Prof. Minor says: "It is not perfectly settled whether it applies, where the grantee has never been able to get possession of the land, or only to subsequent evictions, although the better opinion seems to be, that where at the time of the conveyance the grantee finds the premises in the possession of one claiming under a paramount title, the covenant in question is broken (*i. e.* the

covenant of general warranty) without any other act on the part of either the grantee or the claimant; such failure to get possession being regarded as tantamount to an eviction." 2 Min. Inst. 642. He cites 2 Lom. Dig. 356; *Day* v. *Chism*, 10 Wheat. 449; *Woodford* v. *Pendleton*, 1 H. & M. 303; Rawle's Cov. Tit. 220 *et seq.* and 224.

In *Hoffy* v. *Birchetts*, 11 Leigh 88, Tucker, president, speaking for the whole court said : "Moreover in the case of an incumbrance on the land anterior to that in question the covenant is broken, so soon as the bargainee has been turned out of possession by the first incumbrancer, or even so soon as he has been compelled *in invitum* to pay off the first incumbrance. 2 Lom. Dig. 273 ; *Hamilton* v. *Cutts,* 4 Mass. 349. There is no necessity for him to involve himself in a law-suit to defend himself against a title, which he is satisfied must prevail. *Sprague* v. *Baker,* 17 Mass. 586. For the covenant to warrant and defend implies a covenant for quiet enjoyment, (*Emerson* v. *Proprietors of land in Minot.*, 1 Mass. 464,) and it is broken by any lawful disturbance of a third person."

As I understand *Dickerson* v. *Hoomes*, 8 Gratt. 353, relied upon by counsel for defendants in error, there is nothing in it against the above views.

The settled law I understand to be as follows : If at the time a conveyance with general warranty is made, the premises conveyed are actually in the possession of a third party, holding under a paramount title, this amounts to an eviction *es instanti.* Before an action will lie for breach of covenant of general warranty of title to land, there must be an ouster under a paramount title. Such ouster may be established by showing that there was, at the time the covenant was made, a third person in possession of the land holding under a paramount title : *Hamilton* v. *Cutts,* 4 Mass. 350 ; *Greenvault* v. *Davis,* 4 Hill 643 ; *Duvall* v. *Craig,* 2 Wheat. 62 ; *Witty* v. *Hightower,* 12 S. & M. 478 ; *Drew* v. *Towle,* 10 Foster 537 ; *Fowler* v. *Poling,* 6 Barb. 168 ; *Curtis* v. *Deering,* 12 Me. 501 ; *Biggus* v. *Bradley,* 1 McCord, 500 ; *Mackey* v. *Collins,* 2 Nott & M. 186 ; *Moore* v. *Vail,* 17 Ill. 185 ; *Murphy* v. *Price,* 48 Mo. 250 ; *Clark* v. *Conroe,* 38 Vt. 475 ; *Russ* v. *Steele,* 40 Vt. 315.

But a more serious objection to the declaration and each count is, that the action will not lie against him for breach of ancestor's covenant of general warranty. That such a covenant as is sued on here: "that said Creel by said indenture of bargain and sale did then and there covenant to and with the said plaintiff, his heirs and assigns, that he would warrant generally and defend all the land thereby sold &c.," which by our Code is declared to "have the same effect, as if the grantor had covenanted, that he, his heirs, and personal representatives will forever warrant and defend the said property unto the grantee, his heirs, personal representatives and assigns against the claims and demands of all persons whomsoever" (Code, W. Va. chapter 72, section 13, page 466,) is a personal covenant, there is no doubt. *Tabbs' Adm'r* v. *Binford,* 4 Leigh 132; *Chapman* v. *Holmes,* 10 N. J. Law 24; *Townsend* v. *Van Courtlandt's Ex'ors,* 6 Cow. 123. In *Tabbs* v. *Binford,* Carr J. said:

"It was contended for the plaintiff in error, that the covenant declared upon is a pure warranty, which descended upon the heirs of the covenantor, and upon which this action of covenant did not lie against the administrator. In discussing this point the counsel on both sides went into the ancient and obsolete doctrines of the common law warranty, embracing the *warrantia chartæ, voucher,* and other points of learning connected with the subject. The view which I have taken of the covenant in this case, renders it unnecessary to explore this unfrequented path. Whether the writ of *warrantia chartæ* be an existing remedy with us at this day, I shall not undertake to decide, but this I may say: So entirely have the personal covenants, in conveyances superseded the old common law warranty, that there is not one man in ten thousand, who, when he stipulates for a deed with warranty, means to take that common law assurance, which binds the *lands only* of his vendor and gives him no remedy but the *warrantia chartæ.* In truth this is never the intention of the contracting parties, and therefore in the construction of their covenants I would hold those only to constitute a pure technical warranty, which come strictly up to the definition of it by the ancient writers, *ego et heredes mei warrantizabimus in perpetuum.* These are the technical words; the alienor for

himself and his heirs warrants the land forever. It is no *covenant* or *agreement* to warrant, it is an *actual* warranty. It is no covenant to warrant the *title* to the land, it is a warranty of the *land* itself. In these particulars the covenant before us, differs from the warranty real."

The court held, that the personal representative might be sued upon such a covenant. But the court did not hold that the action would not lie against the heirs in such a case. We have a great many instances at common law where actions on personal covenants of the covenantor, in which he expressly named his heirs as bound, were sustained. *Smith et ux.* v. *Angel,* 1 Salk. 355; *Hemningham's Case,* 3 Dyer 344; *Dyke* v. *Sweeting,* Willes R. 585; Bacon's Abr. Heir & Ancestor F; *Hunting* v. *Sheldrake,* 9 M. & W. 256; 1 Chitty on Pleading, 60; *Willers' Ex'rs* v. *Ellis,* 2 Munf. 88. For form of declaration see 2 Chitty Pl. 143, also the case in 2 Munf. 88.

At common law, where an ancestor bound himself and "his heirs" in an obligation, the obligee might sue the heir or executor at his election, and might have had execution of the lands descended or devised; for the common law having allowed the action against the heirs, the obligee could have no benefit by the action, unless he were permitted to have execution of the lands, which descended to the heir. But the body of the heir was protected, for it would have been most unreasonable to subject the heir to the payment of his ancestor's debt any further than the value of the assets descended. An heir was bound in such case only to the extent of the real assets descended to him and the amount of his distributable share of his ancestor's personal estate. Only the goods and chattels of the debtor, and the annual profits of the land as they arose, and not the land itself, were liable to execution for debt or damages, because these being the security the creditor depended upon, they were liable in the hands of his representative or executor, as well as in the debtor himself, and were bound in the hands of the heir, if he was named in the bond of the ancestor.

The form of the judgment, as we find in "John Robinson's Forms" 1826, p. 133, in the conclusion is: "Therefore it is considered that the plaintiff recover of the defendants $——

the debt aforesaid in the declaration mentioned, of the said lands with their appurtenances to be levied and their costs, &c." This form is for a judgment upon a plea confessing lands by descent, and it ascertains the lands, then follows what we have quoted, and the judgment concludes by requiring the sheriff, that by the oath of good and lawful men he diligently enquire what the lands are worth by the year, "and that the inquisition thereof being by them diligently made, they deliver the said lands with the appurtenances according to the true value thereof to the said plaintiffs without delay, to hold to the said plaintiffs until they shall have levied their debt and costs aforesaid, &c."

The form of an execution upon a judgment in action of debt against an heir is given in same form-book page 371 and is as follows: "Whereas, D. J., in our court of our county aforesaid, before our justices of our said court, at the court-house by the consideration of the said court, hath recovered against R. C., brother and heir of T. C. deceased, 200l for debt and also, &c., which to the said D. J. in the same court were adjudged for his costs by him about his suit in that behalf expended, whereof the said R. C. is convict, to be levied of one messuage, one tenement, and fifty acres of land with the appurtenances, in the parish of N. in the county aforesaid, which descended to the said Richard in fee simple from the said Thomas his brother, as by the record in our said court, before our said justices at the court-house aforesaid manifestly appears. But because it is unknown how much the said messuage, tenement and land, with the appurtenances, are worth by the year, in all issues besides reprises, and such inquisition being thereof by you diligently made, you deliver the said messuage, tenement and land, with the appurtenances, according to the true value thereof to the said D. without delay, to hold to the said D. until he shall thereof have levied his debt and costs aforesaid; and how you shall execute this our writ, make known, &c., next court; and have then and there the names of those by whose oath you make the said inquisition and this writ, witness, &c."

We have given these forms to show that no personal judgment was given but a special judgment to be satisfied out of

the lands descended to the heir. If the ancestor had devised away the lands, the creditor by specialty had no remedy either against heir or devisee; and if the heir before action brought against him had aliened the assets, the obligee was without remedy. To prevent such wrong and injury to creditors, the statute of 3 and 4 W. & M. ch. 14 was enacted. Bacon Abr. Heir and Ancestor F. We have a statute, first appearing in the Rev. Code, §§ 20 and 21 p. 368; 2 Kelly Rev. Stat. 552; Code Va. ch. 116 § 7; Code W. Va. ch. 71 § 7, which provides as follows: "And when the deed of the alienor mentions that he and his heirs will warrant what it purports to pass or assure, if anything descends from him, his heirs shall be bound for the value of what is so descended, or liable for such value." There is another act which provides that any heir or devisee who shall sell and convey any real estate, which by this chapter is made assets, shall be liable to those entitled to be paid out of the said assets for the value thereof with interest; in such case the estate conveyed shall not be liable, if the conveyance was *bona fide*, and at the time of such conveyance no suit shall have been commenced for the administration of the land assets, nor any report has been filed as aforesaid of the debts and demands of those entitled." Code ch. 86 § 5, same as § 5 ch. 131 Code of Va.; From Rev. Code p. 393 § 6; 2 Kelly Rev. Stat. p. 858.

Section 3 of chapter 86 of the Code of this State provides, that "all real estate of any person who may hereafter die, as to which he may die intestate, or which though he die *intestate* (testate) shall not by his will be charged with, or devised subject to the payment of his debts, or which may remain after satisfying the debts with which it may be so charged, or subject to which it may be so devised, shall be assets for the payment of the decedent's debts and all lawful demands against his estate, in the order in which the personal estate of a decedent is directed to be applied." This section is the same as section 3, chapter 131, Code of Va. 1849, from 3 and 4, Will IV. chapter 104, and first appeared in Virginia Acts 1841–2, chapter 98, section 1. Says Mr. Kelly, 2 Rev. Stat. page 857 in his note: "This section follows 3 and 4, Will IV. chapter 104, so as to subject the real estate of a decedent for the payment of his just debts, as well debts on simple

contract as on specialty, and to apply all the assets to the payment of debts, Rep. Rev. Code Va. 674. Prior to this the real estate was bound for specialties, binding the heir, &c." At common law a judgment against a personal representative had priority over other debts of the same character, upon which no judgment was obtained; and so a creditor, who sued the heirs on an obligation of the ancestor and obtained his judgment thereby, became prior to one having the same kind of an obligation, who had not obtained a judgment.

The object of these statutes is, to secure an equitable distribution of a decedent's estate, real and personal among his creditors, and the obtaining of a judgment against the personal representative will not now give priority over any other debt of equal dignity, as that upon which such suit is brought. In this spirit was section 6 of chapter 86 of the Code enacted, which provides, that "an heir or devisee may be sued in equity by any creditor to whom a debt is due, for which the estate descended or devised is liable, or for which the said heir or devisee is liable in respect to such estate; and he shall not be liable to an action at law for any matter, for which there may be any redress by such suit in equity." This is the same as section 6, chapter 131, Code of Va. from 3 and 4, Will IV. chapter 104, Acts 1841-2, page 55, section 3.

Taking these statutes together, in a case like the one at bar it is clear, that an action at law will not lie. And there is to our minds great wisdom in the statutes. There is now no writ of *elegit* by which lands descended could be extended to pay the debt of the ancestor. The proceedings for such case has long been abolished in Virginia; and if the statute at this time would permit such an action as this to lie, the party would at last be driven into a court of chancery, to which the statute now requires he should in the first instance resort. The demurrer was therefore properly sustained, and the action properly dismissed.

THE OTHER JUDGES CONCURRED.

JUDGMENT AFFIRMED.