# CHARLESTON.

## McConaughey & Co. *v.* Bennett's Executors.

Submitted June 24, 1901.    Decided November 23, 1901.

1. Chancery Cause—*Parties Transposed.*

   When a co-plaintiff, being a necessary party, in a chancery cause, declines to prosecute further as plaintiff, and moves the court to dismiss the cause as to him, the court should, upon motion of the other plaintiffs, transpose him to the other side of the cause and allow it to be prosecuted against him as a defendant.    (p. 178).

2. Suits Against Judge—*Where Brought.*

   When a judge of a circuit court is interested in a case, which, but for such interest, would be proper for the jurisdiction of his court, the action or suit may be brought in any county in an adjoining circuit, the county-seat of which county is nearest the county-seat of the county wherein said judge resides, and, in such case, the suit may be brought and prosecuted in such adjoining county, if none of the parties reside therein.    (p. 178).

3. Query—*As To Unlawful Detainer.*

   May an action of ejectment or unlawful detainer, under such conditions, be brought in such adjoining county?    (p. 179).

4. Covenant of Warranty—*Passes With Land.*

   A covenant of warranty is inseparable from the land with respect to which it is made, and passes to the vendee of the covenantee as incident to the land and not as an assignment, separate and distinct from the conveyance.    (p. 182).

5. Covenant Broken—*Right of Action.*

   After breach of such covenant, it can no longer run with the land, nor has any existence or virtue, save for the purpose of supporting a right of action for damages on the part of him who held it at the time of the breach, against the covenantor.    (p. 184).

6. General Warranty—*Paramount Title—Action.*

   If, at the time a covenant with general warranty is made, the land conveyed is actually in the possession of a third party holding the same under a paramount title, there is an eviction *eo instanti,* and a right of action accrues at once to the covenantee.    (p. 183).

7. Damages—*Assignment May Be Made.*

   Such claim for damages may be assigned, in whole or in part.    (p. 184).

8. Kind of Action—*Covenant for Whole Claim.*

If the assignee takes the entire claim, in such case, his remedy is by an action of covenant, and he has an adequate remedy at law, and cannot sue therefor in a court of equity.  (p. 184).

9. Assignment for Part—*Equity the Remedy.*

But, in such case, if only a part of the claim be assigned, the assignee has no remeay in a court of law, and must seek his recovery thereon in a court of equity, although the relief he asks is merely pecuniary.  (p. 185).

10. Covenantor—*Claims Against Estate.*

When, in such case, the covenantor, before suit brought, has died testate, and the relief sought is only the establishment of the claim against the estate, and the bill does not pray for a sale of the testator's real estate, marshaling of the assets and settlement of the estate, the only necessary and proper parties defendant are the executors of the will.  (p. 186).

11. Devisees—*Heirs—Necessary Parties.*

If the devisees and heirs be made parties to such bill with the executors, a demurrer to it should be overruled as to the executors and sustained as to the devisees and heirs and the bill dismissed as to them.  (p. 186).

12. Assignment—*Words Necessary.*

Any language or act which makes an appropriation of a debt, fund or chose in action amounts to an equitable assignment thereof.  (p. 187).


Appeal from Circuit Court, Gilmer County.

Action by McConaughey and others against Bennett's executors and others.  Decree for defendants, and plaintiffs appeal.

*Affirmed in part.*

J. M. Hamilton and Linn, Withers & Brannon, for appellants.

Louis Bennett, for appellees.


Poffenbarger, Judge:

On the 19th day of November, 1896, Samuel M. McConaughey and Newton T. McConaughey, partners doing business as McConaughey & Co. and C. D. Haverty sued out of the clerk's office of the circuit court of Gilmer County a summons in chancery against W. G. Bennett and Louis Bennett, as executors of the will of J. M. Bennett, deceased, and as two of the devisees and heirs at law of J. M. Bennett, deceased, Gertrude Howell

and Mary B. Bowie, devisees and heirs at law of J. M. Bennett, deceased, and J. M. Hamilton, trustee. Service of this process was accepted November 21, 1896, by Louis Bennett as executor, and devisee and heir and as attorney for W. G. Bennett as executor and devisee and heir and as attorney for Gertrude B. Howell and Mary B. Bowie, as devisees and heirs. Hamilton accepted service as trustee. The bill was filed at February rules, 1897. The substance of it is as follows: J. M. Bennett, by a deed dated November 24, 1896, granted to the plaintiff, Haverty, a tract of land, containing seven hundred and eleven acres, lying in Calhoun County together with certain other real estate situated in the same county. As to the seven hundred and eleven acre tract the deed contains a clause of general warranty. Haverty, upon the credit given to him by virtue of said Bennett's deed for said seven hundred and eleven acres of land, obtained credit from the plaintiffs, McConaughey & Co., who were then actively engaged in the mercantile business and in the purchase and sale of timber, and became indebted to McConaughey & Co. on account of certain goods, wares and merchandise and other things of value, amounting to the sum of six hundred and nineteen dollars and fifty-eight cents, for which amount the plaintiff, Haverty, gave McConaughey & Co. his note bearing date of the 8th day of July, 1887, payable four months after the date thereof, and to secure the payment of it and any renewals thereof, Haverty conveyed the seven hundred and eleven acres of land to J. M. Hamilton, trustee, by deed bearing date on the 8th day of July, 1887. Default having been made in the payment of the note, Hamilton, the trustee, was requested by McConaughey & Co. to execute the trust, but after investigating the title he was of the opinion that it would be improper to sell or attempt to sell said land under the deed of trust and he declined to accept, or act under, the trust. The investigation made by Hamilton disclosed that the land was never assessed with taxes or entered upon the land books in the name of J. M. Bennett until the year 1869, when it was entered in his name and assessed with the taxes thereon for that and the two preceding years; that in November, 1873, it was sold for the non-payment of taxes for the year 1872, in the name of J. M. Bennett and purchased by the State; that in November, 1875, it was again sold in the name of J. M. Bennett for the non-payment of taxes for the years 1873 and 1874; that after said last sale it never again appeared on the land books in the name

of J. M. Bennett or any one claiming under him until the year 1886, when it was entered in the name of Haverty; that Bennett never redeemed the land from said sales; that John W. Bailey and others and those under whom they claimed and those claiming under them, claimed said land under titles hostile to the title claimed by Bennett, and had caused it to be entered upon the land books and assessed with taxes regularly and had regularly paid the same for more than ten years next preceding the date of the deed from Bennett to Haverty; that during all that time every part of the land was in the actual, undisputed and undisturbed possession of said adverse claimants under a title which they believed to be good; that whatever title Bennett may have had was forfeited and lost by his failure to redeem from the tax sales and by his failure to have the land entered and assessed with taxes in his name for five consecutive years before the date of his deed to Haverty; that by their adverse possession and payment of taxes and the forfeitures in the name of Bennett, the said Bailey and others, the adverse claimants, had acquired title to the land long before the pretended conveyance by Bennett; and that he had knowledge of all these facts at the time he executed the deed.

The consideration for this conveyance from Bennett to Haverty is stated in the deed to be "An exchange of land," and the bill alleges that the land so given in exchange was the interest of said Haverty in certain lands claimed by Michael H. Haverty of whom the plaintiff, D. C. Haverty, was an heir at law. The value of the land conveyed by Bennett to Haverty is alleged to have been ten dollars per acre at the date of the conveyance. J. M. Bennett died in October, 1887, seized and possessed of a large and valuable estate consisting of real and personal property which he disposed of by will, and it is alleged that sufficient funds of the personal estate yet remain in the hands of the executors to satisfy the demands of the plaintiff and that much real estate remains unsold and undivided among the devisees, while a great deal of it has been partitioned among them and that the executors and devisees are chargeable with assets both real and personal, sufficient to satisfy the demands of the plaintiffs. None of the defendants reside in Gilmer County, and all of the land is situated in Calhoun County. The reason set forth in the bill for bringing the suit in Gilmer County is that W. G. Bennett, one of the defendants, is judge of the eleventh judicial district

composed of the counties of Lewis, Braxton, Nicholas, Webster and Upshur, while Gilmer County is in the sixth circuit which adjoins said eleventh circuit. The prayer of the bill is that a decree be entered ascertaining the value of said tract of land at the time of the breach, to be so paid as to provide—first, for the payment of the debt aforesaid due the plaintiffs, McConaughey & Co. and the residue to the plaintiff, Haverty, and that said amount may be so decreed, together with the costs of the suit, and all charged upon the estate of the said J. M. Bennett, deceased, which has or may come to the hands of his executors and devisees aforesaid, according to the principles of equity, and that they may have other, further and general relief. The defendants entered a plea in abatement which the plaintiffs moved the court to reject. The motion was sustained, the plea rejected and the defendants given time in which to demurr or answer. They filed a demurrer, which on the 10th day of June, 1898, was overruled and they were given further time in which to answer. On the third day of February, 1899, a *nunc pro tunc* order was entered showing that the demurrer was in writing and assigned causes of demurrer. The defendants then moved upon said demurrer, for reasons appearing upon the face of the bill, to dismiss the bill as to McConaughey & Co., which motion was overruled. Thereupon the defendants filed the following writing:

"In the circuit court of Gilmer County, W. Va. McConaughey & Co. and C. D. Haverty, plaintiffs, against W. G. Bennett and Louis Bennett, executors of J. M. Bennett, and others, defendants.—In chancery. I hereby authorize and direct the judge of the circuit court of Gilmer County, West Virginia, to dismiss the above styled suit as to me, as I do not desire to prosecute it further as a plaitniff therein. Witness my hand this 7th day of January, 1898. C. D. Haverty."

Having filed this writing, the defendants on behalf of themselves and Haverty, moved to dismiss the bill as to Haverty, and the court sustained the motion to dismiss it as to Haverty. Then the plaintiffs again demurred to the bill and moved to dismiss it for reasons appearing in the demurrer and in the bill. The court sustained the demurrer and motion, dismissed the bill, and decreed costs against the plaintiffs. Upon the hearing, McConaughey & Co. objected to the consideration of the paper signed by Haverty, and moved the court to transpose him to the position of defendant in the cause, which motion was overruled.

The court further certifies that the signature of Haverty to the paper was sworn to in open court by Louis Bennett, one of the defendants; that, upon cross-examination, he stated that, to the best of his recollection, the only other papers executed by Haverty in regard to said matters were receipts or papers, bearing upon the adjustment and settlement of Haverty's claim in said cause; that the court refused to require the production of the other papers referred to by the witness and also to compel the witness to state, in response to questions on cross-examination, what amount was paid Haverty in consideration of said transactions and also to permit any cross-examination of the witness except as to the genuineness of the paper produced; and that McConaughey & Co. excepted to these rulings of the court. The cause is in this Court upon an appeal from and *supersedeas* to, the decree sustaining the demurrer and dismissing the bill.

The principal causes of demurrer assigned are that the plaintiffs have a complete and adequate remedy at law; that there is a misjoinder of parties defendant in the bill; that the defendants as devisees of J. M. Bennett cannot be called upon to answer the claim of the plaintiffs because the bill shows that there are ample funds in the hands of the executor to satisfy said claim and that fund is the primary one for the satisfaction of the claim; that there is a complete remedy at law according to the allegations of the bill against the executors of Bennett; because there is a misjoinder of plaintiffs, the causes of action of the plaintiff being several and not joint; that McConaughey & Co. cannot sue for the breach of warranty occurring before the date of the deed of trust to their trustees; and that deed, being a conveyance of land to which said J. M. Bennett had no title and of which he was not in possession, was absolutely null and void and will not support a covenant of waranty, such covenant as is contained in such deed, not running with the land and not enuring to the benefit of any subsequent guarantee. Another cause assigned in the brief is that the alleged breach of warranty is founded upon a covenant contained in a conveyance of land the consideration for which was an exchange of other land, in consequence of which the damages alleged in the bill are in the nature of unliquidated damages and a court of equity has no jurisdiction to fix the damages and, therefore, the only remedy is an action at law.

Several of these propositions may be disposed of together. If McConaughey & Co. have any claim at all on account of the

matters set forth in the bill, it is cognizable in equity and not in a court at law, for the reason that they are only to have their claim satisfied out of any sum to which Haverty is entitled by reason of the breach of the covenant of warranty. McConaughey & Co. are not entitled, according to the allegations of their bill, to all of that sum. In considering the demurrer the allegations of the bill must be taken to be true. The bill alleges the value of that land to have been over seven thousand dollars at the time of the conveyance. That would be the measure of the damages or compensation to which Haverty would be entitled. Out of that, McConaughey & Co.'s claim, only six hundred and nineteen dollars and fifty-eight cents with the interest thereon since July 8, 1887, and costs, which, in the aggregate, would be considerably less than one thousand dollars, is to be paid. This demand against the Bennett estate cannot be divided by Haverty by assignment of part thereof to McConaughey & ·Co. so as to subject the Bennett estate to two actions at law on account of the same demand, but, in equity, McConaughey may take an assignment of part of the claim and enforce it. This principle of law and ground of equity jurisdiction is well settled and generally understood. So McConaughey & Co. have no remedy at law. There was no misjoinder of parties plaintiff in the cause. McConaughey & Co. might have made Haverty a defendant and would have been compelled to do so, in asserting their claim, if he had not joined with them as a co-plaintiff. Generally it is not error in equity to transpose parties who might be made defendants so as to make them plaintiffs or *vice versa,* for the reason that in equity all of the parties to the suit are considered actors, and it is no matter on which side of the case they stand. See *Sadler* v. *Taylor and others,* 49 W. Va. 104, and authorities there cited.

The objection that the circuit court of Gilmer County has no jurisdiction over any of the defendants except W. G. Bennett is not well taken. The seventh clause of section 1 of chapter 123 of the Code provides that: "If the judge of a circuit court be interested in the case which but for such interest, would be proper for the jurisdiction of his court, the action or suit may be brought in any county in an adjoining circuit, the county-seat of which county is nearest the county-seat of the county wherein said judge resides." Now if all those who are made defendants with W. G. Bennett, he being the judge of the circuit court of

the county in which the suit might otherwise have been brought, are proper parties to the cause of action, they are suable along with him in such county of an adjoining circuit. It is a well settled rule that where the circuit court of a county has jurisdiction as to one of the proper parties defendant, the others being residents of the State, are subject to its process and jurisdiction also, for the court having acquired jurisdiction of one of the defendants may send its process to any county in the State for the others. As to the defendant, W. G. Bennett, there can be no doubt that the court has jurisdiction over him. That proposition is not denied or questioned. That being granted as well as shown by the allegations of the bill, the jurisdiction of the court as to all others necessarily follows. Said section also provides that "Any action at law or suit in equity, except where it is otherwise specially provided, may hereafter be brought in the circuit court of any county: First, Wherein *any* of the defendants may reside, except that an action of ejectment or unlawful detainer must be brought in the county wherein the land sought to be recovered or some part thereof is." Section 2, chapter 124 provides that "Process from any court, whether original, *mesne,* or final, may be directed to the sheriff of any county" except in a certain class of cases to which this clearly does not belong. If W. G. Bennett had not been judge of the circuit court of Lewis County, in which he resides, the suit might have been brought against him there and all the other defendants brought in no matter in what counties they reside. As he is the judge of said court, the statute expressly permits the suit to be brought in another county. Not only may he be sued in such other county, but "the action or suit" may be brought in such other county. This right is conferred by language as explicit as that used in the first clause, authorizing a suit to be brought in any county "wherein any of the defendants may reside." The fact that the land, out of transactions concerning which, the cause of action arose, is situated in another county is immaterial, for the reason that the demand set up is not local. It is not the purpose of the bill to charge or in any way affect the land or its title. It simply seeks a recovery of money on account of the breach of the covenant of warranty. It is neither an action of ejectment nor one of unlawful detainer. Whether, if it were, the action might be so brought, is foreign to the present inquiry.

The objection that there is a misjoinder of parties defendant is

well taken. Upon the allegations of the bill, the heirs and devisees of the testator are not proper parties. Numerous cases decided by this Court hold that the personal estate is the primary fund for the payment of debts. It is an almost, if not quite, universal rule, both in England and America. 4 Kents Com. 420. Except, where by will, the personal estate is exempted from the payment of debts and the real estate charged therewith, resort can never be had to the real estate of a decedent for the payment of his debts, unless the personal property is insufficient to pay them. There is no pretense here that such is the case in this instance. On the contrary, the bill alleges that the personal estate in the hands of the executors is sufficient for the payment of the debt, as plaintiffs are informed and believe, and it is not alleged that the personal estate is insufficient to pay all the testator's debts. For the purpose of testing the sufficiency of the bill on demurrer, its allegations must be taken as true. Hence, plaintiffs admit the absence of any necessity for resorting to the real estate as well as of any right to demand relief against the heirs and devisees. Moreover, the bill does not purport to be a creditor's bill, filed under section 7, chapter 86, Code. It prays for no settlement of the estate. Marshaling of assets or sale of the testator's real estate, so that other creditors might come in under it. It seeks only to establish a demand against the estate. In such cases, the personal representatives only are necessary and proper parties. *Jones* v. *Reid, Adm'r*, 12 W. Va. 350; *McGlaughlin* v. *McGlaughlin's Legatees*, 43 W. Va. 240. In the former case, the Court held that "In a suit to recover a claim against an estate, simply, no defendant is necessary or proper except the personal representative."

Assuming that this is intended to be a creditor's bill, is the failure to allege insufficiency of the personal estate of the testator to pay all his debts fatal to it? Has a creditor any right of action against an heir or devisee, without showing such insufficiency? Can he frame his bill in the alternative and with a double aspect, praying relief against the personal representative only, if the personal estate be found sufficient to pay the debts, and, if not, then against the heirs or devisees." In 4 Kent's Com. 420, it is said that, by legislation remedying the harsh and unjust rule of the common law, "Heirs are rendered liable for the debts of the ancestor by simple contract, as well as by specialty, and whether specially named or not, to the extent of the

assets descended, *on condition* that the personal estate of the ancestor shall be insufficient, and shall have been previously exhausted." Kerr on Real Prop., s. 2302, says: "In all those cases where a person dies leaving debts, *if the personal estate is insufficient to pay them,* the courts of chancery have power to direct a sale of the real estate to enforce the payment of such debts." The statutes of many of the states, on this subject, are very similar, and the same general principle underlies all of them. In *Wyse* v. *Smith et als.,* 4 Gill & J. (Md.) 295, the court decided that "The real estate of the debtor is protected, unless the personal assets are insufficient; and to authorize the chancellor to pass a decree to sell the real estate to pay the debts of the deceased, the bill must allege an insufficiency of personal assets for that purpose, which allegation must be admitted by the answers, or proved." There the bill failed to allege such insufficiency and the contrary appeared from the pleadings and the bill was dismissed. Our statute provides that "when the personal property of a decedent is insufficient for the payment of his debts," his executor or administrator may bring a suit in equity to have the real estate sold to pay the debts, and if he does not commence such suit within six months after his qualification, any creditor may do so. If the statute is to be literally followed and the proceeding under it is the only remedy for reaching the real estate of a decedent for the payment of his debts, a bill which fails in such case to allege insufficiency of the personal property would undoubtedly be bad. In the partial construction of chapter 86 of the Code, necessary to the decision of the case of *Rex* v. *Creel,* 22 W. Va. 373, Johnson, President, shows that sections 3, 5 and 6 of that chapter should be taken and considered together. Sections 7, 8, 9 and 10 prescribe the mode effectuating the provisions of section 3 of said chapter, but to what extent, if at all, sections 5 and 6 are limited and governed by these administrative provisions is a question the solution of which would require much investigation. In *Rex* v. *Creel,* Judge Johnson only went so far as to say that an action at law cannot be maintained against the heirs on a covenant of general warranty made by the ancestor, for the reason that section 6 of chapter 86, allows an heir or devisee to be sued in equity by any creditor to whom a debt is due, for which the estate descended or devised is liable, or for which the said heir or devisee is liable in respect to such estate, and prohibits an action at law against him

for any matter for which there may be any redress by suit in equity. In *Poling* v. *Huffman,* 39 W. Va. 320, Judge Dent says section 5 must be construed along with sections 6 and 7 so as to allow a creditor to file his bill on the death of the ancestor, if necessary, to prevent an alienation of the land by the heir, and, further, that these sections do not take away the right of a creditor to file a bill against both the personal and real representative of the estate for the discovery and application thereof to the payment of his debts. However, it seems that, in a pure creditor's bill against the estate of a decedent, under said section 7, without any allegation of special circumstances, and filed for the sole purpose of subjecting the real estate of the decedent to the payment of his debts generally, the insufficiency of the personal estate should be alleged, but it is not necessary to so decide in this case, as has been shown. It is virtually so held in *Hale* v. *White,* 47 W. Va. 700. See opinion of Judge Dent in that case.

The question most seriously and extensively discussed is whether there is any liability upon the Bennett estate by reason of the covenant of warranty contained in the deed. That deed passed no title to Haverty. Bennett had no title to the land. Technically a covenant of warranty passes with the land as an incident thereto, and it was formerly held that where the covenantor, by the deed in which the covenant was inserted, conveyed no land to the grantee and had no title to convey, the deed was null and void and the covenant contained in it did not become effectual, and no suit either at law or in equity could be maintained upon it. *Dickinson* v. *Hoomes,* 8 Grat. 396; *Slater* v. *Rawson,* 1 Metc. 450; 6 Metc. 419; *Randolph* v. *Kinney,* 3 Rand. 394. The court of appeals of Virginia in *Dickinson* v. *Hoomes, supra,* at page 404, speaking through Judge Moncure, questions the soundness of this doctrine as applied to the use of covenants of warranty in Virginia conveyances, in the following language:

"There may have been good reason under the feudal constitution for requiring that the warranty should accompany the estate and exist only between the donor and the donee. But the technical warranty which formerly existed has been altogether disused, if not abolished; and its place is now supplied by covenants, which better suit the present condition of things. I can see no reason why these covenants, if in their nature they are

such as can run with the land, should not run with the land as
well when they are made by a stranger as when they are made
by the donor; but I can see many reasons for the contrary. A
person may be entitled to purchase land notwithstanding a flaw
in the title, if he can fortify it by proper covenants. The owner
may not be sufficiently responsible, but may be able to procure
the assitance of responsible friends, or creditors, or others may
have sufficient interest to join him in the covenants. But what
would these covenants be worth if they could not be enforced by
an assignee of the land? A covenant of *seisin*, or of *right to
convey,* would never be given in such a case, because it would be
known to the parties that as soon as made it would be *ipso facto*
broken. A covenant of *warranty,* or for *quiet enjoyment,* would
be the most appropriate covenant for such a case; and yet, to
make that covenant effectual, it would be necessary, according
to the doctrine contended for, that the covenantee should always
retain the property."

In *Burtners* v. *Keran,* 24 Grat. 42, the court holds that
"Though an assignee can only take advantage of the covenant of
warranty when an estate passes by the deed, yet it is, in favor of
the grantee, a covenant in gross, and binds the warrantor though
no estate passes by the deed." Judge Staples, delivering the opin-
ion of the court in that case, said: "It may be true that an as-
signee can only take advantage of the covenant of warranty
when an estate passes by the deed. This, however, is only be-
cause at common law a covenant, like every other chose in action,
was incapable of assignment. It could only pass as an incident
to an estate; and if the grantee had no estate, his assignment
could not transfer the covenant of warranty. In such case there
was nothing to which the covenants could attach." The law
seems to be well settled in this State according to the principles
announced by Judges Moncure and Staples. In *Rex* v. *Creel,*
22 W. Va. 375, Johnson, President, says: "The settled law I
understand to be as follows: If at the time a conveyance with
general warranty is made, the premises conveyed are actually in
the possession of a third party holding under a paramount title,
this amounts to an eviction *eo instanti.* Before an action will lie
for breach of covenant of general warranty of title to land, there
must be an ouster under a paramount title. Such ouster may
be established by showing that there was, at the time the cove-
nant was made, a third person in possession of the land holding

under a paramount title. *Hamilton* v. *Cutts,* 4 Mass. 350; *Green-vault* v. *Davis,* 4 Hill 643; *Duvall* v. *Craig,* 2 Wheat. 62; *Witty* v. *Hightower,* 12 S. & M. 478; *Drew* v. *Towle,* 10 Foster 537; *Fowler* v. *Poling,* 6 Barb. 168; *Curtis* v. *Deering,* 12 Me. 501; *Biggus* v. *Bradley,* 1 McCord 500; *Mackey* v. *Collins,* 2 Nott & M. 186; *Moore* v. *Vail,* 17 Ill. 185; *Murphy* v. *Price,* 48 Mo. 250; *Clark* v. *Conroe,* 38 Vt. 475; *Russ* v. *Steele,* 40 Vt. 315.

Warranty and other covenants running with the land form no exception, in one sense, to the common law rule that a chose in action is not assignable. These covenants formed the basis of actions at law and they passed with the land from one owner to another as it was conveyed by a deed, devised by a will, or inherited by the heir. The person owning the land at the time of the breach of the covenant had his right of action upon that covenant. But upon the occurrence of a breach the covenant ceased to run. It was no longer assignable. It never was detachable from the land and could not be transmitted or assigned from one person to another in any other way than as incident to the land. The conveyance was of the land and the covenant incidentally passed to the vendee and could pass in no other way. It was inseparable from the land. When the land was taken from the person holding by virtue of it the covenant, by paramount title, the running of the covenant ceased, as there was nothing to which it could attach. 1 Smith Lead. Cas. 120; 2 Lomax Dig. 342, s. 35; *Dickinson* v. *Hoomes,* 8 Grat. 353; *Randolph* v. *Kinney,* 3 Rand. 394; 19 Am. & Eng. Ency. Law, 997. It is believed that this rule is without any exception. Haverty having acquired no land by his deed from Bennett, could convey no land to Hamilton, trustee, for the benefit of McConaughey & Co. as incident to land passing from McConaughey & Co. to Hamilton. McConaughey & Co., therefore, cannot maintain any suit against Bennett's executors and devisees as assignee of the covenant made by Bennett to Haverty. There was a breach of the covenant at the very moment in which it was made. Upon it a right of action accrued to Haverty immediately. It became then in his hands a claim for damages against Bennett which he might have asserted in an action of covenant in a court of law. After breach a covenant is a mere claim, a chose in action incapable of transmission or descent, and to be sued upon by the executor or administrator if the breach occurred in the covenantee's lifetime. Com. Dig. Covt. 1.

The distinction between the covenant, alive, active and in full force, capable of being passed to successive alienees, as it is until a breach occurs, and the covenant broken, incapable of passing further as incident to the land, although raising a claim for damages in favor of him who held it, against the covenantor, must be borne in mind. Such a claim is all that Haverty ever held as the result of the paper executed to him by Bennett. That he might have asserted, as has been already stated, in a court of law. Instead of doing so, he, being indebted to McConaughey & Co., joined with them as plaintiffs in a bill praying that enough of that claim to satisfy and pay off the amount of his debt to McConaughey & Co. be decreed to them and the balance to him. In the process commencing the suit, they joined as plaintiffs. It is, therefore, beyond question that, before this suit was instituted, Haverty had assigned a portion of this claim to McConaughey & Co. This assignment was based upon a valuable and sufficient consideration. Haverty owed them a large debt and undertook to pay it in that way, and the bill alleges that he was without property, save that claim, and was unable to pay McConaughey & Co. in any other way. McConaughey & Co. thus acquired an interest in the claim. Upon it they could not sue the executors and devisees of the Bennett estate at law, but it gave them the right to sue in a court of equity. As the question of liability as to McConaughy & Co. and as to Haverty was one and the same, they could with propriety join in a suit as plaintiffs. Had Haverty declined to join his assignees as plaintiffs, after vesting in them an interest in the fund, they might have made him a defendant instead of uniting with him as a plaintiff in the cause.

It is no objection to the jurisdiction of a court of equity that the object of the bill is pecuniary relief, provided the claim is equitable in its nature. "Several kinds of equitable suits are wholly pecuniary in their relief, as those for contribution and exoneration. Secondly, those cases in which the relief is not a general pecuniary judgment, but a decree of money being obtained and paid out of some particular fund or funds. The equitable remedies of this species are many in number and various in their external forms and incidents. They assume that the creditor has either by operation of law, or from contract, or from some acts of omissions of the debtor, a lien, charge or encumbrance upon some fund or funds belonging to the latter, either

land, chattels, things in action, or even money." Pom. Eq. Jur. s. 112, vol. 1, p. 118.

In further elucidation of the questions raised here, attention is directed to the fact that "All rights of action arising out of contract may be assigned." 2 Am. & Eng. Ency. Law (2d Ed), 1018. All rights of action which would survive to the personal representative, may be assigned. *Butler* v. *R. R. Co.,* 7 How. Pr. Rep. (*N. Y.*) 492; *Jordan* v. *Gillen,* 44 N. H. 424. "The general rule as to the survival of an action after the death of a plaintiff or defendant is, that actions of contract survive and that actions of tort do not." 24 Am. & Eng. Ency. Law, 1027. "If a covenant of warranty is broken in the lifetime of the coventee, or one holding the covenant, his executor must sue upon it, and not his heirs." 4 Am. & Eng. Ency. Law, 511, note, citing numerous cases. If any authority were necessary, this shows that Haverty's cause of action was such as survives and is, therefore, assignable. It also illustrates the difference between the covenant, unbroken and running with the land, and the right of action growing out of the breach of the covenant of warranty, after which it no longer runs with the land. "The heirs or devisees of the grantee may maintain a joint action upon a covenant of warranty." 4 Am. & Eng. Ency. Law, 510. *Paul* v. *Witman,* 3 Wils. & T. 407. That can only be done when the breach occurs after the death of the ancestor, and possibly where although the breach occurred in the lifetime of the ancestor, the damage accrued to the heir.

That the remedy of McConaughey & Co. is equitable appears from the case of *Bank* v. *Kimberlands,* 16 W. Va. 555, and the array of authorities cited by Judge Green in his opinion on page 590, where he says, "When a person having a demand due him assigns part of it to different persons, whether by separate orders in their favor or otherwise, they are valid, equitable assignments *pro tanto,* and though, if the orders are not accepted, a court of law will in no manner recognize these partial assignments or orders as equitable assignments, yet a court of equity, in a suit in chancery, will recognize and enforce them." See also *St. Lawrence Boom and Mf'g Co.* v. *Price,* 38 S. E. 526.

The sufficiency of the assignment by Haverty is questioned by counsel for appellees, but no authorities are cited, bearing upon the question. The assignment is clearly sufficient. "Any lan-

guage or act which makes an appropriation of a fund amounts to an equitable assignment of that fund." 2 Am. & Eng. Ency. Law, (2nd Ed), 1055. In the same volume at page 1056, it is said, "Moreover, it may be stated as a general rule, that a valid, equitable assignment of a debt or other chose in action, whether evidenced by a writing or not, may be made by parol, as well as by deed, and it is not important whether it be by writing or mere words;" and, further, at page 1057, "At one time the courts seemed to be inclined to the rule that the assignment of an instrument under seal must be by deed, on the principal that the instrument of transfer must be of as high a nature as the instrument transferred. But it is well settled at present that an equitable assignment of an instrument under seal may be by parol as well as by deed." Haverty, by coming into court as one of the plaintiffs in the cause and joining in the prayer of the bill that the demand of McConaughey & Co. be paid them out of whatever sum might be ascertained to be due him from the Bennett estate, made a solemn and formal appropriation to them out of his said demand. He not only did that after suit brought but also at the time the suit was instituted by joining in the praecipe, directing the process to issue.

The decree of the circuit court of Gilmer County is, therefore, erroneous in sustaining the demurrer and dismissing the bill as to W. G. Bennett and Louis Bennett, executors of the will of J. M. Bennett, deceased, and in refusing to allow Haverty to be transposed from the position of plaintiff to that of defendant, upon the motion of McConaughey & Co.; but it is right in sustaining the demurrer and dismissing the bill as to the devisees and heirs of J. M. Bennett, in which latter respect it must be affirmed and in all other respects it must be reversed, with cost and damages to the appellants. But the dismissal as to said devisees and heirs is to be without prejudice to the right of McConaughey & Co. to hereafter assert, in any proper proceeding, any claim they may have against said devisees and heirs on account of the lands of the testator devised and descended to them. The cause is remanded to said circuit court for further proceedings according to the principles herein announced and the rules and principles of equity.

*Affirmed in part.*