# CHARLESTON.

HARR v. SHAFFER.

Submitted June 9, 1902.    Decided December 6, 1902.

1. JUDICIAL EVICTION—*Warranty*.

Judicial eviction from land is not indispensable to a recovery upon a general warranty. Actual or constructive ouster will suffice.    (p. 211).

2. CONVEYANCE—*Trust Deed*.

Where there is a conveyance with general warranty, and the land is at the time under a prior deed of trust given by the grantor, under which the land is sold away from the covenantee in possession, who then quits possession, such sale under the paramount claim is a breach of such warranty.    (p. 209).

3. HUSBAND AND WIFE—*Real Property*.

A wife acquiring land must, in a suit by creditors to charge it with her husband's debts, not merely prove that she paid for it, but must clearly-prove that she paid for it with her separate estate, else the presumption is that the means paying for it came from her husband.    (p. 212).

Appeal from Circuit Court, Tucker County.

Bill by Seymour Z. Harr against S. H. Shaffer and others. Decree for defendants, and plaintiff appeals.

*Reversed.*

LLOYD HANSFORD for appellant.

A. B. PARSONS and J. P. SCOTT, for appellees.

BRANNON, JUDGE:

By a deed of general warranty, 2d October, 1899, S. H. Shaffer and wife conveyed to Seymour Z. Harr a tract of three hundred and twelve and one-half acres ·of land in Tucker County. This and other tracts were once owned by Harness, and he conveyed this tract to Randolph as trustee to secure some parties as sureties for Harness in a bond to Harper, 19th October, 1882. A chancery suit was brought by Auvil against Harness to sell the lands of Harness to pay debts, in which suit some of the lands of Harness were sold, he becoming the purchaser, giving some notes for the purchase money with Shaffer as his surety. Harper was not a party, nor were the sureties secured in the deed of trust to Randolph. Harper's debt was decreed; but as he was not before the court and the tract of three hundred and twelve and one-half acres was in the deed of trust operating to secure his debt, that tract was not decreed to sale, was not sold, and the right was reserved to the securities in the Harper debt to enforce their deed of trust against that tract. Harness failed to pay the purchase money, and Parsons, the commissioner who made the sale in the Auvil case, brought a suit to re-sell the lands for the purchase money, and they were re-sold and bought by Shaffer. By deed of trust, dated 4th September, 1885, Harness conveyed several tracts, this tract of three hundred and twelve and one-half acres perhaps being one of them, to Parsons as trustee to secure Shaffer in the said notes given by Harness to Parsons, commissioner, under said sale made by Parsons in the Auvil case. Dailey was substituted as trustee in place of Randolph in the deed of trust from Harness to Randolph and he sold the tract of three hundred and twelve and one-half acres under that deed of trust to Chipley and Shearer, and conveyed to them. In a chancery suit of Crossland against S. H. Shaffer, Cunningham, commissioner, sold three tracts of thirty-nine and seven-eighths, fifty-six and five acres, Mrs. Shaffer, wife of S. H. Shaffer, becoming purchaser. These lands were the property of Shaffer. Shaffer had a survey made of a boundary of one hundred and

twenty-five acres, which included said three tracts, and also some other land belonging to him, took the survey to Cunningham and had him to insert the metes and bounds of that survey in the deed which Cunningham as commissioner made to Mrs. Shaffer.

Harr brought a chancery suit in Tucker County against Shaffer setting up the conveyance by Shaffer to him of the three hundred and twelve and one-half acres, the deed of trust given by Harness to Randolph, trustee, for the Harper debt, the sale of the three hundred and twelve and one-half acres under it, seeking to establish and quiet his title derived from Shaffer over the right under the sale by Dailey, trustee; and in default of that relief, then to compel Shaffer to convey to Harr other lands in place of the three hundred and twelve and one-half acres; and in default of that relief, asking a personal decree against Shaffer for damages for the breach of the warranty contained in the deed from Shaffer to Harr. The circuit court dismissed Harr's bill, reserving right to him to bring any other suit against Shaffer for his rights mentioned in that suit, and on appeal to this Court that decree was affirmed. 45 W. Va. 709.

Later Harr brought the chancery suit we now have in hand in Tucker circuit court for the purpose of recovering from Shaffer for breach of warranty in the deed to Harr from Shaffer and wife, charging that in the purchase of said three small tracts at the judicial sale made by Cunningham to Mrs. Shaffer her husband was the real purchaser, and paid the purchase money, and that she had nothing to pay with, and that the purchase in her name was with intent to defraud him out of his debt, and that Shaffer procured the conveyance of the boundary of land by commissioner Cunningham to his wife with that intent. The court dismissed Harr's bill and he appeals.

It is apparent that the deed from Shaffer and wife to Harr, as it was subsequent to the Harper deed of trust, conferred no title on Harr. Harness gave that deed of trust to secure the sureties in the bond to Harper before the deed of trust from Harness to secure Shaffer as surety in the debt of Harness to Parsons, commissioner, if that is, as it seems, the shadow of

title claimed by Shaffer for the three hnudred and twelve and one-half acre tract conveyed by Shaffer to Harness, though it does not appear that, in fact, there ever was a sale and conveyance of it under that deed of trust. Shaffer, without a sale and conveyance, would be only a creditor, which would confer no right to convey; and if he had a conveyance from the trustee, it would pass no right as against the sale by Lee Wood Dailey, trustee, under the older deed of trust for the Harper debt. And Shaffer got no right under the judicial sale by Parsons, commissioner, under the decree in the case of *Parsons, Commissioner,* v. *Harness,* because that tract was not sold under the decree in the case of *Auvil* v. *Harness,* and not resold in the case of *Parsons, Commissioner,* v. *Harness;* nor was it conveyed to Shaffer by Parsons under the sale. Harr thus got no title by his deed; but after the sale by trustee Dailey, Harr did not wait to be sued for possession, but voluntarily yielded possession, or in his language, "I dispossessed myself— I just quit." The question then comes whether, without eviction or even demand by the hostile claimant, Harr can recover on the warranty. The old cases, and some late ones, demand eviction by judicial process; but later cases say that ouster, without judicial eviction, is enough. *Ouster in pais* is sufficient. But what amounts to such ouster? It does not require forcible dispossession, "Any actual entry and dispossession, adversarily and lawfully made under paramount title, will be sufficient." Rawle, Cov. Title, sec. 133. But actual entry and dispossession are not demanded. Demand of possession only under paramount title may be yielded to without a loss of right under the warranty. In the leading case of *Hamilton* v. *Cutts,* 4 Mass. 309, Am. D. 222, Parsons, C. J., said: "It is true that if the tenant consents to an unlawful ouster, he cannot afterwards be entitled to a remedy for such ouster. But an ouster may be lawful; and in that case the tenant may yield to dispossession, without losing his remedy on the covenant, which in this State is a personal action for covenant broken. There is no necessity for him to involve himself in a lawsuit to defend himself against a title which he is satisfied must ultimately prevail. But he consents at his own peril. If the title to which he has yielded be not good, he must abide the loss; and in a suit against his warrantor the burden of proof will be on

the plaintiff, though it would be otherwise in case of eviction by force of a judgment at law; with notice of the suit to the warrantor." In *Sprague* v. *Baker*, 17 Mass. 586, land conveyed under warranty was under prior mortgage, just as in this case, and the vendee yielded and paid it, and this mortgage was held to be a constructive ouster good to give action on a general warranty. This is the current of authority. 8 Am. & Eng. Ency. L. (2d Ed.) 108; *Donnell* v. *Thompson*, 25 Am. D. 216; note, 14 *Id.* 53; Rawle, Cov. Title, s. 134.

It does not seem that Harr waited for a demand from the adverse claimant for a surrender of possession, but quit possession. Does this prevent his recovery? The cases say that while eviction or dispossession by adverse title is not demanded, yet the better title must be hostilely or adversarily asserted. 8 Am. & Eng. Ency. L. 110; Rawle, Cov. Title, s. 149. The mere silent existence of a superior title will not do by this law. A demand of possession will do; a demand for payment of a prior mortgage will also. In this case the hostile title is a deed of trust from Harness to his sureties for the Harper debt. The question is, was the sale under that deed of trust such an assertion of the adverse title as to amount to constructive eviction or ouster? I think it was in reason and upon authority. It told in no uncertain import that the assertion of that claim was intended. It was the consummation of that trust by passing the equitable and legal title from Shaffer. A general warranty is a covenant for quiet possession. Did not this sale, signifying that Shaffer had not paid, would not and could not pay, the Harper debt, disturb the quiet of Harr's possession? Could he thereafter go on to clear this wild land and improve it in peace and safety? Could he crop it in certainty of reaping, or sow it in grass for pasturage? A deed of trust was given in the case of *Haffey* v. *Birchett*, 11 Leigh 83; then a second one of general warranty; and a sale was made under the first; the court held that the sale was a breach of that warranty calling for damages. That is our case. Many cases say that where a vendee buys in, or under, a prior claim, it is an ouster for action on the warranty. Shaffer had notice of this sale before it took place, as Harr went to him to get him to do something to save him; but he did not prevent the sale by payment, did nothing to stay it, though he did not deny the debt.

He had notice to defend, as if in a suit. So, the sale by Dailey worked a breach of Shaffer's warranty to Harr. But if this were not so, then the decrees of the circuit and supreme courts in *Harr* v. *Shaffer,* to which Harr and Shaffer were parties, held that Harr took no title by the deed from Shaffer, and is *res judicata* of that fact between them, and from that fact arises a liability by law under the warranty. The governing question, the substantial one is, was the title given by Shaffer to Harr bad? Mrs. Shaffer was not a party to that suit, but I think that decision upon that fact is conclusive on grounds stated in *Bensimer* v. *Fell,* 35 W. Va. 15, holding that a judgment against a party is conclusive as to all others of the amount of indebtedness and its justness.

During the existence of Shaffer's liability to Harr Mrs. Shaffer bought the three tracts of thirty-nine and seven-eighths, fifty-six and five acres at the judicial sale made by Cnuningham of her husband's lands. She was not present at the sale. Commissioner Cunningham never saw her. The land was bid in by an attorney for her. The husband was present and executed the sale notes in her name. When payment was made one, two or three of the checks were checks owned by the husband, payable to him, endorsed by him. On the deferred payments S. H. Shaffer paid one hundred dollars. Another deferred payment was made by an attorney for Mrs. Shaffer, but the manner of payment the commissioner does not remember. The attorney was not examined. This shows that the purchase was really that of the husband to defeat Harr's debt. This intent on Shaffer's part is strongly confirmed by another circumstance. Before a deed was made to his wife under that sale he took a surveyor and had a boundary of land surveyed, including the three tracts which his wife had so purchased, and also including land of his which she had not purchased, in the whole one hundred and twenty-five acres, and had Commissioner Cunningham to convey by that boundary thus seeking to put in his wife's name, not only those three tracts, but some other of his valuable land. Why did he do this? Cunningham says that before the sale of Shaffer's land Shaffer asked him to give a statement of the amount required to pay the decree, saying that he intended to pay before sale; but later Shaffer told him that he preferred to have the land sold under

the decree so as to get the land in the name of some one else on account of some controversy or suit with Harr. The first suit of Harr against Shaffer, in which Harr sought to recover from Shaffer on account of this transaction, was then pending. In addition, it is not shown that Mrs. Shaffer furnished a cent to pay on the land, or had anything with which to pay. Even if it were shown that she paid, it would not do; for many times have this and other courts decided that where a wife pays for property that payment is nothing in a contest between her and creditors of the husband, but she must by clear proof show that she paid for the property out of her separate estate, and if such proof is wanting, the presumption is that her husband furnished the money to pay for it. *Brooks, Rogers & Co.* v. *Applegate,* 37 W. Va. 373. Neither Shaffer nor his wife vouch their oaths to the honesty of this transaction. They neither go upon the stand, nor put a witness on the stand. A strong presumption arises against them from this omission. *Wellstone* v. *Truax,* 44 W. Va. 531. By the conveyance from commissioner Cunningham Shaffer sought to cover up not only the three tracts, but some of his own, and all the land in the deed of Cunningham is liable to Harr. "A conveyance of property from husband to wife, directly or indirectly, with fraudulent intent towards prior or subsequent creditors will be held void as to them." *Billingsley* v. *Clelland,* 41 W. Va. 234. Whether we regard this transaction as fraudulent in actual intent, or a devotion of a husband's means as a voluntary transfer to his wife, the land is liable to Harr's demand. Therefore, we reverse the decree and remand the case to the circuit court with direction to pronounce a decree in Harr's favor for his demand against Shaffer, and to subject to its payment the boundary of land conveyed by A. M. Cunningham, commissioner, to Ellen V. Shaffer, dated 12th day of July, 1897, excepting five acres sold to Swearingen by Shaffer and wife.

*Reversed.*