# CHARLESTON.

WOMENLSDORF *v.* O'CONNOR.

Submitted January 15, 1903.    Decided April 18, 1903.

1. PROMISSORY NOTE—*Jurisdiction—Equity.*

 There is jurisdiction in equity to cancel promissory notes for total failure of consideration and enjoin an action at law thereon. (p. 316).

2. DEED—*Title—Fraud.*

 A purchaser of land under general warranty deed will not be compelled to pay notes given for purchase money when there has been a decree cancelling the deed vesting title in his grantor because of fraud in such grantor in procuring such deed, and also cancelling, for such fraud, the deed to such purchaser from such grantor. (p. 316).

3. DEED—*Decree—Warranty.*

 Though one to whom land has been conveyed with general warranty deed, and who has lost the land by a decree cancelling both the deed vesting title in his grantor and also the deed to such purchaser, on account of the fraud of such grantor in procurement of the deed to him, has conveyed the land away, yet such purchaser will not be compelled to pay notes given to his grantor for purchase money, whether such purchaser has been made liable or not to his grantee on account of his own warranty. (p. 317).

4. DEED—*Warranty—Fraud.*

 O'Connor conveyed land to Womelsdorf with general warranty. In a suit by O'Connor's grantor to cancel the deed to O'connor and also the deed from O'Connor to Womlesdorf, on account of the fraud of O'Connor in procuring his deed, there is a decree cancelling both deeds. In a suit in equity by Womelsdorf to cancel notes given to O'Connor for purchase money O'Connor cannot, to defeat relief to Womelsdorf, demand that he be placed in *statu quo* by the reconveyance of the land by Womelsdorf of him. (p. 318).

Appeal from Circuit Court, Randolph County.

Action by O. C. Womelsdorf against J. P. O'Connor. Decree for defendant, and plaintiff appeals.

*Reversed.*

E. D. TALBOTT, for appellant.

J. A. BENT, for appellee.

BRANNON, JUDGE:

Patrick O'Connor conveyed a tract of 205 acres of land to John P. O'Connor, and John P. O'Connor conveyed it to O. C. Womelsdorf, and Womelsdorf conveyed it to the Roaring Creek Coal and Coke Company, and that company conveyed to Diller and Terry, trustee. John P. O'Connor conveyed to Womelsdorf with covenant of general warranty, and Womelsdorf paid down to O'Connor $1,537.00, and gave O'Connor two notes of $768.75 each for deferred purchase money. As will appear from *O'Connor* v. *O'Connor*, 45 W. Va. 354, Patrick O'Connor brought a suit against John P. O'Connor, Womelsdorf and the coal company to set aside the deed from Patrick O'Connor to John P. O'Connor, and the deed from John P. O'Connor to Womelsdorf, and the deed from Womelsdorf to the coal company, and they were by the decision in that case wholly annulled.

Later John P. O'Connor brought an action at law against Womelsdorf upon the two notes given by Womelsdorf to John P. O'Connor for unpaid purchase money under the conveyance of the land from O'Connor to Womelsdorf, when Womelsdorf filed a bill in the circuit court of Randolph County against O'Connor to enjoin the suit at law upon said notes and to cancel the notes. An amended bill was filed making Diller and Terry parties. The amended bill brought Diller and Terry and the coal company in and set up the conveyances of the land to them, and averred that they had assumed to pay the notes to O'Connor, and that the liability of Womelsdorf under his warranty to the coal company was uncertain, and that he ought not be compelled to pay O'Connor unless he could be exonerated from liability to the coal company, and it would be unjust to compel him to pay O'Connor and still answer his warranty to the coal company. He asked that these matters be settled. The bill proceeded upon the theory that O'Connor was insolvent, and that the land had been taken from Womelsdorf and his vendees by decree of this Court, setting aside said deeds. O'Connor was insolvent. The court heard the case upon the bill, amended the bills, demurrers by O'Connor, his answer, replications, answers of Terry, claiming that he, not O'Connor, was entitled to the money in the hands of Womelsdorf, special reply by O'Connor to Terry's answer, and depositions; but the court, after reciting that the cause was heard on the whole record as stated, sustained the demurrers

and dismissed the bill and amended bill, and Womelsdorf appeals.

This is a suit by Womelsdorf to cancel notes and be relieved from paying them by reason of badness of title to land conveyed by general warranty. He could either defend at law, or go into equity. Equity can cancel the notes. The general law gives equity jurisdiction to cancel notes given without consideration. Besides, section 6, chapter 126, Code, allows either suit. *Luddington* v. *Tiffany,* 6 W. Va. 11; *Heitt* v. *Shull,* 36 *Id.* 563.

It is clearly settled law that even where it is not the case of unpaid purchase money under an executory contract for the sale of land, but where a deed has been made, the purchaser will not be compelled to pay purchase money remaining in his hands and looks to his warranty, where the grantor is insolvent and title defective. O'Connor is insolvent, and the deed he received from Patrick O'Connor, and that made by John P. O'Connor to Womelsdorf utterly annihilated by decree. Does any one suppose that O'Connor could enforce the lien reserved in his deed to Womelsdorf in equity? Why, then, should he collect it at law? *Bennett* v. *Pierce,* 45 W. Va., and cited cases. O'Connor and Womelsdorf were both parties to the O'Connor suit declaring said deeds void, and it is *res judicata* between them on that point. It settles that the land is gone from Womelsdorf, and is sufficient eviction. *Harr* v. *Shaffer,* 43 S. E. 89, 52 W. Va. Counsel for O'Connor would impress upon us the law of actions upon a covenant of warranty; would treat this as if it were a suit by Womelsdorf to recover back money paid upon the land under a breach of warranty. It is not such a suit. It is a suit to enable Womelsdorf to keep in his hands purchase money for his indemnity; I should rather say, not for his indemnity, should he loose the land, but to be relieved from paying money for land already irrevocably lost to him.

Counsel tells us that the law touching actions on covenants of warranty requires that the covenantee place the covenantor in *statu quo,* that is, that Womelsdorf give O'Connor back the land before he can recover, and that he cannot do this as he has conveyed it away. As just stated, this is not that kind of a suit. But O'Connor gave Womelsdorf nothing to be given back, passed no title in fact. Pay O'Connor purchase money when Womelsdorf got nothing from him! A startling proposition!

The title to the land was given back, over both their heads, to Patrick O'Connor, and the right of that decree binds both as *res judicata.* If Womelsdorf still had the land, it would be another case. He has it not to give back, not merely because he sold it, for that sale is gone, but because O'Connor never conferred it upon him, and it has gone back to Patrick O'Connor by law. Where a grantee loses his land from a superior adverse title, is an action on the warranty defeated for want of reconveyance? Or can a right to be exempt from paying purchase money be defeated by such demand? Here the land is lost by superior claim to that of John P. O'Connor. He cannot return it. 8 Ballard Real Prop. 382.

Again, counsel would tell us that Womelsdorf cannot stay the collection of the notes, but must pay them, because he has never been called on by the coal company to make good his warranty. I do not deny the position that where one parts with all interest in the land warranted, he parts with all right to or control over those covenants that go with the land, and can only regain the right to use them by being made liable upon his own warranty, and paying his liability.    Rawle, Cov. for Title, sec. 215; Manpin on Marketable Title, sec. 158; *Jones* v. *Richmond,* 88 Va. 231. But that doctrine is inapposite in this case. That would apply, if Womelsdorf were sueing to recover for money he had paid. This is a suit to keep from paying when he gets nothing.

It is charged that Womelsdorf was a party implicated in the fraud practiced by John P. O'Connor on his uncle in getting an absolute deed under promise to return it if he did not pay for the land in three days, as set forth in 45 W. Va., section 354, and equity will not help him. The evidence does not show that when Womelsdorf bought of O'Connor he knew of John P. O'Connor's pledge to return the deed in three days. O'Connor in the first suit as a witness exonerated Womelsdorf from the imputation, though he now charges it. This inconsistency discredits him. If even Womelsdorf had known of it, he did not know that O'Connor had changed the writing from three to fifteen days, and had no reason to believe that O'Connor would not pay as he agreed. But Womelsdorf paid the purchase money to O'Connor, $1,537.50. Would he have done so, if he had known of such change of the writing. And as Patrick and John

P. O'Connor were uncle and nephew living together, even if Womelsdorf had known of the change, but did not know of any want of authority, to change it or that it would not be satisfactory. The former decision did not find Womelsdorf a participant with John P. O'Connor in the fraud, but only that as the latter's dead was void, he could confer no title on Woomelsdorf. Womelsdorf denied that he was aware that the land had not been paid for.

I do not see that Womelsdorf could bring into the case the coal company and Diller and Terry and litigate whether they were entitled to recover against him on the warranties in deeds to them, as that would introduce for litigation matters in which O'Connor had no interest. But as they agreed to pay these very notes to O'Connor they were proper parties as to that. They were really brought in in order that if Womelsdorf should be decreed liable, the money might be decreed to them, as O'Connor would be liable to them under his warranty. I do not think these various matters could be litigated in a suit limited to the question between Womelsdorf and O'Connor whether Womelsdorf was liable to pay the notes. But as we hold he is not liable this is immaterial.

Holding as we do that as the land is lost to Womelsdorf he cannot be made to pay the balance of the purchase money, we reverse the decree and cancel the two promissory notes made by O. C. Womelsdorf to John P. O'Connor for $768.75 each, in the record mentioned, and award a perpetual injunction against the prosecution by said O'Connor of the action at law in the circuit court of Randolph County in his name as plaintiff against said Womelsdorf, based on said notes.

*Reversed.*