383 S.E.2d 41

**BOOKER T. WASHINGTON
CONSTRUCTION &
DESIGN CO.**

v.

**HUNTINGTON URBAN RENEWAL
AUTHORITY.**

No. 18483.

Supreme Court of Appeals of
West Virginia.

April 6, 1989.

Rehearing Denied July 20, 1989.

Norman K. Fenstermaker, Susan E. Morton–Smith, Jenkins, Fenstermaker Krieger, Kayes & Farrell, Huntington, for Huntington Urban Renewal Authority.

James E. McDowell, Raleigh, N.C., for Booker T. Washington Const. & Design Co.

Scott Damron, Huntington, for City of Huntington a Municipal corp. 3rd Pty Def. Below.

NEELY, Justice:

The City of Huntington sold a parcel of city land to the Huntington Urban Renewal Authority so the latter could redevelop the property for residential use under a federal low interest loan program. The City sold this land by a general warranty deed for one dollar.[1] The Authority executed an agreement to sell the land to the plaintiff/appellee, the Booker T. Washington Building Construction & Design Company, so the latter could improve the property and sell it to a private homeowner. The construction company built a residence but was unable to sell the property to its prospective purchaser because a title search revealed that the Authority had only a life estate in the property. The construction company never acquired title to the property.

---

1. The deed states, in pertinent part: "This conveyance is made with covenants of GENERAL WARRANTY."

The City purchased the property in 1981 from several members of the Mickens family.[2] However, the deed to the City did not include conveyance by persons who were remaindermen under the will of Clarence E. Mickens. On 6 April 1984, the Booker T. Washington Company filed this action in the Circuit Court of Cabell County alleging the City and the Authority breached the contract because the Authority could not convey good and marketable title to the property as required by the contract. The construction company alleged that it suffered lost profits, interest, litigation expenses and other consequential damages. The construction company also alleged a wilful and wanton refusal by defendants to cure the defect in the title and sued the City and the Authority for punitive damages. The City was dismissed as a defendant because it was not a party to the contract. However, on 6 September 1984, the Authority sued the City as a third-party defendant, calling upon the City to defend the title and to indemnify the Authority for any damages awarded against it and for costs and legal expenses.

On 4 January 1986, the City filed an action to condemn the property. By an Amended Final Order entered on 7 October 1986, the Circuit Court of Cabell County declared fee simple title to be vested in the City.[3] The City then argued that because it eventually passed good title through its condemnation action, it should be dismissed as a defendant. The Circuit Court of Cabell County agreed and granted summary judgment in favor of the City, dismissing it from the suit.[4] The Authority appeals, assigning as error the circuit court's order granting summary judgment.

The City argues that the filing of the lawsuit by the Booker T. Washington Company was not a sufficient ouster to violate the general warranty covenant.

*W.Va.Code,* 36–4–2 [1923] states:

A covenant by a grantor in a deed, "that he will warrant generally the property hereby conveyed," or a covenant of like import, or the use of the words "with general warranty" in a deed, shall have the same effect as if the grantor had covenanted that he, his heirs and personal representatives will forever warrant and defend the said property unto the grantee, his heirs, personal representatives and assigns, against the claims and demands of all persons whomsoever.

The language of this statute codifies the common law covenant of warranty, also known as the general warranty of title.[5] The covenant of warranty is one of six personal covenants for title, those of: (1) seisin, (2) right to convey, (3) freedom from encumbrances, (4) warranty, (5) quiet enjoyment, and (6) further assurances. 6A *Powell on Real Property* at 81A–130. These covenants are explicit and, therefore, must be included in the deed in order to apply.[6] These common law covenants for title are descended from the English covenants of title which came into standard use in English land transactions during the seventeenth century.[7] *Id.* at 81A–129.

2. Catharine Lawrence, widow; Darlena Miller, widow; Clarence C. Mickens, Sr. and Isabelle Mickens, his wife; and Augusta Mickens, widower.

3. Although there was no conveyance by the City to the Authority after the property was condemned, when a vendor acquires title after a conveyance by general warranty deed, the subsequently acquired title inures to the benefit of the purchaser as if it had passed by the original deed. *Clark v. Lambert,* 55 W.Va. 512, 47 S.E. 312 (1904); *Yock v. Mann,* 57 W.Va. 187, 49 S.E. 1019 (1905).

4. The court also granted summary judgment in favor of the fourth-party defendant, the law firm that prepared the Abstract of Title for the City.

5. The covenant of warranty can refer to either a general or special warranty of title. The former is a covenant to defend the title against claims by anyone, while the special warranty is only a promise to defend the title against claims by or through the grantor. 6A *Powell on Real Property* at 81A–141.

6. Each of the covenants has a "short form" that, by statute (except for the covenant of seisin), is given the same effect as if the covenant were fully set forth, such as *W.Va.Code,* 36–4–2 [1923] does for the covenant of general warranty.

7. However, the modern covenant of warranty (or general warranty of title) is distinct from the feudal doctrine of warranty which obtained under the writ of *warrantia chartae. Rawle on*

■ The general warranty of title is a covenant that runs with the land and is, as the language of the statute states, binding on the heirs of the grantor by a remote grantee. This Court set forth the effect of this covenant in *McKinley Land Co. v. Maynor*, 76 W.Va. 156, 85 S.E. 79 (1915):

> A covenant of general warranty of title is merely a covenant to warrant and defend the title against the claims of all persons whatsoever. It is not broken until there is an eviction of the vendee from the property, or equivalent disturbance, by title paramount. *Harr v. Shaffer*, 52 W.Va. 207, 43 S.E. 89; *Rex v. Creel*, 22 W.Va. 373; 11 Cyc. 1125. The mere existence of an outstanding paramount title will not authorize a recovery on the warranty. In substance and effect the covenant is a guaranty against an actual eviction, or a constructive eviction by possession of another under paramount title. Hence it is not broken until there is an eviction actual or constructive. It is not broken as long as the enjoyment of the property is not disturbed. It is not broken as long as there is no necessity that the title of the vendee be defended. Maupin on Marketable Title, secs. 142, 144, 146, 177.

> . . . . .

> The vendor is not bound by the warranty to transfer a good title to the vendee. But the vendor by the personal covenant is bound to make good any loss that may spring from his having transferred a bad title.

76 W.Va. at 160, 85 S.E. at 80.

■ The requirement that there be an eviction or equivalent disturbance of the enjoyment of the property as a necessary element for a breach of the covenant distinguishes this covenant from the express covenant of seisin. The covenant of seisin is a promise that the grantor is the owner and has good title to the estate he purports to convey. It is a present covenant because it is broken, if at all, at the time of the conveyance, and a cause of action for its breach immediately arises. *Rawle, supra*, chapt. III; *Powell, supra* at 81A–132–34. The general warranty of title is not a covenant that the grantor has good title; rather, it is a covenant to defend the title against "the claims and demands of all persons whomsoever." It is a future covenant because it is not breached at the time of conveyance, even with an outstanding paramount title, but only when there is an eviction, "or equivalent disturbance." [8] The eviction can either be an actual eviction or a constructive eviction. *McKinley, supra*, 76 W.Va. at 160, 85 S.E. at 80. The Authority argues that the lawsuit by the Booker T. Washington Company constituted a constructive eviction while the City argues that no constructive eviction took place. Both parties argue that this court's holding in *Brewster v. Hines*, 155 W.Va. 302, 185 S.E.2d 513 (1971) supports their respective positions.

In *Brewster*, the plaintiff bought 145 acres for $8,000 from the defendant and his wife who conveyed the land "with covenants of general warranty of title." A title search conducted later revealed that a couple who were residents of Ohio owned fee simple title to the land. The plaintiff then sued defendant for a breach of the covenant of general warranty. During the pendency of this suit, plaintiff instituted a suit against the Ohio couple to litigate title to the land. The plaintiff gave notice of the suit to quiet title to the defendant's lawyer in the breach of warranty case. The Court held that the Ohio couple had title to the land. The plaintiff filed an amended complaint that included the court's judgment in the quiet title suit, and the record from that suit was stipulated as

*Covenants for Title* at 205–15 (4th Ed.1873). Although a few jurisdictions treat the general warranty of title as subsuming all of the covenants for title, such a construction is generally denied and the covenant of warranty is considered the equivalent of the covenant for quiet enjoyment. *Powell, supra* at 81A–142, *Rawle, supra* at 213–15, *Maupin on Marketable Title to Real Estate* at 359–60 (3rd ed.1921).

8. An exception applies when at the time of the conveyance, there is paramount title in one who is in possession of the property. In such a case, the possession by a person with paramount title operates as an eviction *eo instanti* and, therefore, a breach of the covenant. *Rex v. Creel*, 22 W.Va. 373 at 375 (1883).

an exhibit in the breach of warranty action. The trial court granted summary judgment to the defendant, holding that although a grantor under a general warranty deed must defend, at his expense, the title he conveys to a grantee when the grantee is sued by another party claiming title, the grantor is not required to do so when the grantee initiates a lawsuit to test the validity of the title. On appeal, this Court reversed the trial court's summary judgment award and held that the plaintiff's allegations were sufficient to state a claim of constructive eviction that would violate the covenant of general warranty given by defendant.

The case now before us represents a different situation than that at issue in either *Brewster* or *McKinley, supra;* however, in both cases, this Court clearly stated that a covenant of general warranty is broken when there is a disturbance of the enjoyment of the property equivalent to an eviction creating a "necessity that the title of the vendee be defended." [9]

Both parties also argue that *Sarlls v. Beckman,* 104 N.E. 598 (Ind.App.1914), relied upon as authority for the *Brewster* decision, supports their positions. In that case, a grantee under a general warranty deed was preparing to sell the property in question, but was hindered from doing so because others also claimed an interest in the property. The grantee initiated a suit against the claimants to quiet title, and the claimants were held to own an indivisible, one-third interest in the property. The grantee sued a remote grantor for a breach of the latter's covenant of general warranty. The grantor argued that there was no breach of the covenant because no one actually nor constructively evicted the grantee from the property. Rather, the grantee initiated the quiet title suit when he did not have to; he could have held the land for twenty years and cut off the claim-

ant by adverse possession. The Court held that there was a breach of the covenant, stating:

> The purchaser of real estate, in this day of activity in trade and frequent transfers of property, who discovers a defect in his title, upon his effort to make a desirable sale, cannot be obliged to remain silent for a period of 20 years, and perhaps sustain serious losses on account thereof; but he has the clear right to notify the grantor of the defect in title, and, if the grantor refuses, as in this case, to assume the burden of curing the defect, then the grantee may go into court, have the title determined, and compel his grantor to respond in damages in such amount as may be shown he has sustained. Any other rule would impose a burden upon the purchaser of real estate to hold it for a period of 20 years before he might be able to enjoy the full benefits thereof.

104 N.E. at 600.

In the case now before us, the Booker T. Washington Company sued the Authority for a breach of contract based on the Authority's inability to convey a marketable title. The Authority then filed its third party action against the City for a breach of the general warranty covenant contained in the deed from the City to the Authority. There is one old case from another jurisdiction where the grantor purported to convey a fee but had only title to a life estate and the court held that the covenant of quiet enjoyment was not broken until the life estate expires and the covenantee is evicted. *Maupin, supra* at 379, n. 22. However, that decision is not binding authority for us, and we believe such a holding to be untenable in this day of frequent land transactions. Certainly today, even more than in 1914 when *Sarlls* was decided, the

---

**9.** The "necessity" that the title be defended requires that there actually be a defect in the title as a prerequisite for the covenantor's liability under his general warranty deed. "[T]he covenantee is clearly not entitled to demand of the covenantor expenses in defending a suit which sustains the title as valid, for the covenant does not bind for any outlays necessitated by the

simple existence or assertion of an adverse claim." *Smith v. Parsons,* 33 W.Va. 644, at 646–47, 11 S.E. 68, at 69 (1890). In this sense, the covenant is not really a promise to defend the title "against the claims and demands of all persons whomsoever," but rather a promise to defend the title against all such claims that would prevail.

right to enjoy one's property necessarily includes the right to sell the property.

▆▆▆ In initiating its condemnation suit, the City admitted that the title it passed to the authority was defective. In paragraph VI of its sworn complaint, the City states, in part, that "Jo Ann Jones and other interested unknown persons are the grandchildren of Clarence E. Mickens, Jr., and, therefore, hold a remainder interest in the said property ..." It is undisputed that when the City purchased the property, it failed to acquire the interests of these remaindermen. In addition, the circuit court, in his findings of fact, states that the deed to the City did not include as grantors persons who were remaindermen under the will of Clarence E. Mickens. Therefore, we hold that when the grantee of real property under a fee simple, general warranty deed contracts to sell the fee to a purchaser and, in fact, the grantee has only a life estate, if the purchaser sues the grantee for an inability to convey marketable title, the covenant of general warranty in the deed to the grantee is broken, and the covenantor, upon proper notice, is obligated to defend the title or be answerable to the grantee in damages.

However, two inter-related questions remain: What action was the City bound to take in defending the title?; and, What is the City's potential liability for damages? The Booker T. Washington Company has sought damages from the Authority not for the value of the remainder estate, but consequential damages including lost profits and the value of improvements apparently resulting from the Authority's alleged breach of contract. The City eventually passed good title to the Authority at the successful conclusion of its condemnation action. What further liability, if any, does the City have to the Authority?

▆▆▆ The general rule regarding the measure of damages in an action for breach of the covenant of general warranty was stat-

ed in *Moreland v. Metz*, 24 W.Va. 119 (1884):

> If a covenant of warranty is broken in Virginia or West Virginia, the measure of damages, when the land is entirely lost to the vendee, is the purchase money with interest from the date of the actual eviction, the costs incurred in defending the title and such damages as the vendee may have paid or may be shown to be clearly liable to pay the person who evicted him. But if the actual value of the land at the time of the sale be proven to be greater than the purchase-money with interest, & c., perhaps this actual value might be recovered in lieu of the usual measure of recovery. [Citations omitted].

*Id.* at 137–38.[10] If the purchaser suffers only a partial eviction, the measure of damages is the portion of the purchase money that represents the relative value of the land (or interest) lost compared to the value of the whole land (or interest). *Butcher v. Peterson*, 26 W.Va. 447 at 455 (1885).

In addition to compensation for the loss of the warranted property, most courts allow a covenantee to recover costs and reasonable attorneys fees incurred by the covenantee in defending the title when the covenantor is given notice to defend the title and fails to do so. *Powell, supra* at 81A–149, 20 *Am.Jur.2d*, Covenants, Conditions, etc., § 152, *Jacobson v. Thrash*, 435 So.2d 88 (Ala.Civ.App.1983).

▆▆▆ In the case *sub judice*, the city did eventually correct the deficiency in the title through its condemnation action and passed fee simple title to the Authority. The general warranty covenant given the Authority by the City does not mean that the City must completely indemnify the Authority. The action against the Authority by Booker T. Washington company is based on a breach of contract to which the City is not a party, and the plaintiff is claiming several types of consequential and punitive damages. Although these dam-

---

**10.** The minority rule, followed by some of the New England states, is that the measure of damages for a breach of general warranty is the value of the land at the time of eviction, includ-ing the value of any improvements made before the eviction. 24 W.Va. at 138–39; *Powell, supra* at 81A–148; *Maupin, supra* at 424–27.

ages might stem from the inability of the Authority to convey marketable title, they are not damages that can be awarded the Authority against the City for a breach of the latter's general warranty. The damages for which the City might be liable under its general warranty of title are limited to the value of the remainder estate at the time of conveyance as determined from the actual value of the fee simple estate (the consideration paid is *prima facie* but not conclusive evidence of the actual value of the fee) and the costs and reasonable attorney fees expended by the Authority to determine the actual state of the title to the land.

Because the City was successful in condemning the land and eventually passed fee simple title, the City thereby mitigated its damages. However, because the City was put on notice (by being named a party defendant) that the title was allegedly defective, it should have initiated the condemnation action (or taken other ameliorative action) immediately rather than waiting more than a year and a half before doing so. Therefore, should the Booker T. Washington Company recover damages from the Authority, the City will be liable to the Authority for interest on the value of the remainder estate from the date an answer was due on the plaintiff's original complaint until the final order in the condemnation action. In addition, the City will also be liable to the Authority for costs and reasonable attorney fees incurred by the Authority not to defend the breach of contract action, but to determine that the title to the property was defective.

We readily admit that at first glance, the facts of this case appear outrageous given the obvious loss and difficulties suffered by the construction company, and the equally apparent negligence of the City and the Authority in failing to discover they had only a life estate in the property. The initial reaction after reading the facts and the text of the general warranty covenant codified at *W.Va.Code*, 36-4-2 [1923] is that the City should make everyone whole. If we were creating the law from the ground up, as it were, such might be our reaction. However, property law is a body of ancient, well-developed law with numerous technical wrinkles. The twin policies favoring stability and predictability, particularly important in property law, mandate that we refrain from tinkering at these long-established principles in order to adjust the equities in a given case.

However, on close examination, the equities in this case are well served by our decision, which in no way limits a judgment the construction company might be awarded against the Authority. If the Authority had desired to protect itself against the eventuality of a lawsuit and recovery against it by the construction company, it should have purchased title insurance whenbefore buying the property from the City. Commercial parties should know enough to purchase title insurance, particularly when planning to improve property. The concept of a general warranty deed is in many ways obsolete today, when title insurance can be purchased at a modest price with an almost absolute guarantee against title defects because title insurance lawyers seldom make mistakes.

Accordingly, the Circuit Court of Cabell County's award of summary judgment to the City of Huntington is reversed and the case is remanded for further proceedings consistent with this opinion.

Reversed and Remanded.