998 F.2d 1009
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
IMPERIAL COLLIERY COMPANY, a corporation, Plaintiff-Appellant,
v.
CITIES SERVICE OIL AND GAS CORPORATION, Defendant-Appellee.
 No. 91-1845.
 United States Court of Appeals,
Fourth Circuit.
 Argued: June 5, 1992.
July 6, 1993.
 
 Appeal from the United States District Court for the Southern District of West Virginia, at Charleston. Dennis Raymond Knapp, Senior District Judge. (CA-85-847-2)
 Argued: J. Thomas Lane, Bowles, Rice, McDavid, Graff & Love, Charleston, West Virginia, for Appellant.
 Dina Mattingly Mohler, Kay, Casto, Chaney, Love & Wise, Charleston, West Virginia, for Appellee.
 On Brief: Charles B. Dollison, Bowles, Rice, McDavid, Graff & Love, Charleston, West Virginia, for Appellant.
 Mark A. Swartz, Kay, Casto, Chaney, Love & Wise, Charleston, West Virginia, for Appellee.
 N.D.W.Va.
 AFFIRMED IN PART, REVERSED IN PART AND REMANDED.
 Before PHILLIPS, Circuit Judge, BUTZNER, Senior Circuit Judge, and STAMP, United States District Judge for the Northern District of West Virginia, sitting by designation.
 OPINION
 BUTZNER, Senior Circuit Judge:
 
 
 1
 Imperial Colliery Company appeals a judgment of the district court, entered on remand, awarding it general damages but denying it special damages arising from the violation of the terms of a lease by Oxy USA, Inc. (formerly Cities Service Oil Company). Imperial also appeals the district court's denial of its motion to certify several issues to the West Virginia Supreme Court of Appeals.
 
 
 2
 The district court awarded Imperial a reasonable royalty plus interest for gas which Oxy extracted from Imperial's land after Oxy's lease terminated in 1978. However, the district court denied Imperial's request for special damages. Finally, finding that Imperial had failed to demonstrate the absence or ambiguity of controlling law, the district court denied Imperial's motion to certify.* We affirm all of the district court's rulings except its denial of attorneys' fees. A West Virginia case, decided after the district court entered judgment, affords precedent for allowing the fees.
 
 
 3
 * As the facts of this case are thoroughly recounted in our prior decision, see Imperial Colliery Co. v. OXY USA Inc., 912 F.2d 696, 699700 (4th Cir. 1990), we will sketch them briefly.
 
 
 4
 Imperial owned and leased to Oxy property in West Virginia upon which there were 14 gas-producing wells. The terms of this lease required Oxy to pay Imperial
 
 
 5
 one eighth (1/8) of the current wholesale market value at the well for all gas produced ... which wholesale market value is hereby defined to mean the prevailing purchase price currently paid at the well by purchasers of gas at wholesale in the field in which the well is located.
 
 
 6
 The lease initially ran for ten years, and then by its terms continued as long as the leasehold produced gas. The gas produced from these 14 wells was then combined with other gas from the area and sold to Equitable Gas Company.
 
 
 7
 In 1976, Imperial became concerned that Oxy was underpaying royalties, a charge which Oxy disputed. This dispute turned on whether the lease required royalty payments based on proceeds from the contract between Oxy and Equitable or instead on the current market value of gas. As the price for gas had risen dramatically since the Oxy-Equitable contract, royalties based on the contract were far smaller than would be those based on current market value. In 1980, Imperial stopped cashing Oxy's royalty checks, and in 1985 Imperial brought suit alleging royalty underpayments, lease termination resulting from these underpayments, and damages.
 
 
 8
 During discovery, Imperial found information which indicated that Imperial's wells had ceased to be profitable in 1978. Imperial thus amended its complaint to allege that the lease terminated by its terms at that time.
 
 
 9
 Following a bench trial, the district court held that Oxy had underpaid royalties under the lease, that the lease terminated when the wells stopped producing paying quantities of gas in 1978, and from that point on Oxy was a bad-faith trespasser. The district court awarded Imperial the market value of the gas which Oxy extracted from Imperial's land after its lease terminated.
 
 
 10
 We affirmed except on the issue of damages. We vacated the award of damages and remanded to the district court for assessment of the damages due to Imperial from Oxy as a holdover tenant, rather than as a trespasser. Imperial, 912 F.2d at 707.
 
 
 11
 Upon remand, the district court determined that the proper measure of damages for a holdover tenant such as Oxy was a reasonable royalty for the gas which it extracted from Imperial's wells from January 1, 1979, until the date of the district court's judgment, with allowances for prejudgment and postjudgment interest and standard court costs. The district court denied Imperial's requests for special and punitive damages.
 
 II
 
 12
 Imperial appeals the district court's denial of its motion to certify issues pertaining to waste and damages to the West Virginia Supreme Court of Appeals. Imperial filed its motion pursuant to W. Va. Code § 51-1A-1 et seq., which permits the district court to certify legal questions which may be determinative of the pending cause of action if they are not the subject of controlling precedent in the West Virginia Supreme courts. See James G. v. Caserta, 175 W. Va. 406, 408, 332 S.E.2d 872, 874 n.2 (1985). As the district court noted, the burden is on the party seeking certification to demonstrate that controlling precedent is at least ambiguous. See O'Brien v. Tri-State Oil Tool Indus., 566 F. Supp. 1119, 1122-23 (S.D. W. Va. 1983). The decision to certify is left to the discretion of the district court, "and the mere difficulty of ascertaining local law does not appear to be an adequate reason for remitting the parties to a state tribunal." Miller v. N.R.M. Petroleum Corp., 570 F. Supp. 28, 29-30 (N.D. W. Va. 1983).
 
 
 13
 Imperial has thoroughly briefed the court on the issues which it would have us certify. Additionally, the district court opinion reveals an abundance of applicable law on the subjects in question. The district court observed:
 
 
 14
 As is evident from the parties' briefs ... there is a considerable body of law available to permit a principled conclusion. The absence of a case exactly on point is not the issue. [Imperial's] problem is not that there is little or no law regarding the issues raised; [Imperial's] problem is that the law which exists is unfavorable to its position.
 
 
 15
 Imperial Colliery Co. v. OXY USA Inc., No. 2:85-0847, slip op. at 4 (S.D. W. Va. Sept. 25, 1991); see also Imperial, 912 F.2d at 706-07 (citing cases). The district court's remarks also reflect the fact that Oxy did not seek certification until nearly six years after it filed its actions. A review of the record reveals no abuse of discretion on the part of the district court in denying Imperial's motion for certification. We affirm the district court's denial of the motion and deny the renewal of the motion in this court.
 
 III
 
 16
 Imperial argues that it is entitled to trespass damages beginning a month after Imperial sent Oxy a letter notifying it that Imperial would consider Oxy to be in default if it did not rectify Imperial's complaints within 30 days by increasing the royalty. Imperial maintains that on March 3, 1985, Oxy forfeited the lease because it did not increase its payments. The forfeiture damages, Imperial contends, should be computed at the full value of the gas removed (rather than at a reasonable royalty) and should run from March 3, 1985, until February 23, 1989, the date of the first district court judgment in this case.
 
 
 17
 Additionally, Imperial contends that it is entitled to treble damages for the entire period when Oxy was a holdover tenant. Imperial argues that one commits waste when he or she removes any part of a leasehold without the special permission of the lessor. Imperial then couples W. Va. Code § 37-7-1, providing that tenants are liable for waste which occurs during their tenancy, with W. Va. Codes 37-7-4, allowing treble damages for waste which is committed"wantonly."
 
 
 18
 The district court held that determination of either of these issues on remand would exceed the scope of our mandate. It observed that with regards to the forfeiture issue the Fourth Circuit had already rejected this argument when it denied Imperial's petition for rehearing. Additionally, the district court noted that Imperial at no time pled, "presented, proved or asked for" any damages under a waste theory until after remand on the limited topic of damages for a holdover tenancy.
 
 
 19
 The district court did not err. Moreover, apart from the district court's correct decision, we conclude that Imperial's claims lack merit. In exceptional cases, we are able to recall or amend our mandate if by so doing we would avoid injustice. Alphin v. Henson, 552 F.2d 1033, 1035 (4th Cir. 1977) (dictum); see also Newhouse v. Robert's Ilima Tours, Inc., 708 F.2d 436, 442 (9th Cir. 1983). However, no injustice is done to Imperial by denying it damages under a theory of waste.
 
 
 20
 We previously held that Oxy was a holdover tenant after January 1, 1978. 912 F.2d at 707. The legal relationship between a landlord and a tenant during the holdover tenancy generally remains the same as if the lease were still in effect. Restatement (Second) of Property § 14.7 (1977).
 
 
 21
 Here the lease expressly provided for Oxy's removal of gas from Imperial's land. Imperial cannot argue that Oxy committed waste by continuing to remove gas from the leasehold during the holdover period. It did not damage the leasehold or remove timber, oil, or other minerals not within the contemplation of the lease. Cf. Hardman v. Brown, 77 W. Va. 478, 483-85, 88 S.E. 1016, 1019-20 (1916) (timber cutting without permission of cotenant); Kavanaugh v. Donovan, 186 Va. 85, 91-92, 41 S.E.2d 489, 492-93 (1947) (damage to a leased building). Having been authorized as a tenant to remove the gas, Oxy cannot be accused of committing waste by extracting the very resource it contracted with Imperial to remove. Waste is committed when a resource is taken without permission of a cotenant. Authorized taking is not waste. See Cecil v. Clark, 47 W. Va. 402, 406, 35 S.E. 11, 13 (1900). Requiring Oxy to pay a reasonable royalty during the holdover tenancy adequately compensated Imperial.
 
 
 22
 Nor can Imperial argue at this stage that it is entitled to forfeiture damages. Imperial never before argued that it was entitled to forfeiture damages if the lease were held to have terminated in 1978. Moreover, addressing its claim of forfeiture, Imperial argued before the district court in 1988 that "[s]hould the Court rule that the lease terminated in 1978, it is not necessary to consider this issue [i.e. forfeiture]." See Imperial's proposed findings of fact and conclusions of law at 27. In its reply brief filed in the district court, Imperial stated "that the facts show that the 1944 Lease terminated in 1978, when it ceased to produce in paying quantities. Should the Court so hold, this issue [of forfeiture] is moot...." Imperial's reply brief at 13. The district court adopted Imperial's proposed findings in holding that "the 1944 Lease would have been forfeited as of March 3, 1985, had it not terminated according to its own terms in 1978." Imperial Colliery Co. v. Oxy USA Inc., No. 2:85-0847, slip op. at 16 (S.D. W. Va. Feb. 23, 1989) (unpublished). Having once argued that were the lease to be held to have terminated it would not be necessary to consider forfeiture damages, it is improper for Imperial to reverse its position.
 
 IV
 
 23
 In TXO Production Corp. v. Alliance Resources Corp., 187 W. Va. 457, 468, 419 S.E.2d 870, 881, cert. granted on unrelated issue of punitive damages, 113 S. Ct. 594 (1992), the Supreme Court of Appeals held that "attorneys' fees incurred in removing spurious clouds from a title qualify as special damages in an action for slander of title."
 
 
 24
 An action to remove a spurious cloud from a title does not differ conceptually from an action to eject a holdover tenant who, having been advised that the lease has terminated, refuses to vacate the premises. In both situations a landowner is compelled to incur attorneys' fees to vindicate its unencumbered right of possession. Also instructive is West Virginia precedent awarding attorneys' fees to a covenantee in an action arising out of the breach of a contract of general warranty. Booker T. Washington Constr. & Design Co. v. Huntington Urban Renewal Auth., 181 W. Va. 409, 414, 383 S.E.2d 41, 46 (1989). Additional authority for awarding Imperial attorneys' fees is found in the Restatement (Second) of Property § 14.6 comment b (1977): "[C]osts reasonably incurred by the landlord ... in securing the possession from a tenant who improperly holds over, whether through the use of judicial process ... or through the use of self help ... qualify also as special damages."
 
 
 25
 West Virginia's recognition of a property owner's entitlement to attorneys' fees in closely related cases and the Restatement persuade us that on remand the district court should allow Imperial reasonable attorneys' fees.
 
 V
 
 26
 We have held that § 4 of the Clayton Act, which allows a prevailing party to recover " 'the costs of suit and a reasonable attorney's fee' ... does not include expert expenses except in cases of exceptional circumstances. We adhere to the view that where Congress has desired that such expenses be recoverable, they have specifically authorized such recovery." Barber & Ross Co. v. Lifetime Doors, Inc., 810 F.2d 1276, 1282 (4th Cir. 1987) (footnote and citations omitted). Neither the West Virginia legislature nor its Supreme Court of Appeals has authorized recovery of the expenses of an expert. We agree with the district court that, in the absence of West Virginia law, Barber & Ross provides precedent for the denial of expert witness expenses.
 
 VI
 
 27
 Imperial also claims that it is entitled to recover the reasonable costs of plugging the wells and reclaiming the land as special damages. Imperial argues that it is obliged to plug the wells by W. Va. Code § 22B-1-19, which requires the operator of a well to plug it if it has been abandoned. Within six months after plugging the wells, the operator must reclaim any disturbed area around them. W. Va. Code § 22B-1-30.
 
 
 28
 The flaw in Imperial's argument is that the wells have not been abandoned, and therefore no party has incurred the obligation to plug the wells. The district court ordered Oxy to leave the leasehold and to relinquish the wells to Imperial. As the court held, "[t]he lease has terminated despite OXY's objections and the producing wells were turned over to Imperial. Accordingly ... OXY had no obligation to plug the wells or to reimburse Imperial for the cost of plugging and reclamation since Imperial is the operator." Imperial Colliery Co. v. OXY USA Inc., No. 2:85-0847, slip op. at 8. The district court's finding that Oxy had not abandoned the wells is not clearly erroneous.
 
 
 29
 The wells produced gas valued at $170,144.45 during the last full year of Oxy's operation.
 
 VII
 
 30
 The parties disagree whether postjudgment interest should be calculated from the date of the original judgment or the date of the judgment entered on remand. The controversy arises because at pertinent times the postjudgment interest rate was higher than the prejudgment rate.
 
 
 31
 Imperial contends that the district court should have calculated interest at postjudgment rates from the date of the original judgment in this case. Oxy counters that because the court of appeals remanded for recomputation of damages which resulted in a substantial reduction in the amount of damages to which Imperial is entitled, postjudgment interest should not be allowed from the date of the original judgment. The relevant statute, 28 U.S.C. § 1961, states that interest "shall be calculated from the date of the entry of the judgment" but offers no insight into what approach to take in a case such as this where there is a second judgment after remand. Both parties cite Kaiser Aluminum & Chem. Corp. v. Bonjorno, 494 U.S. 827 (1990), as support for their positions.
 
 
 32
 For the purpose of this case, it is sufficient to briefly describe pertinent parts of the proceedings in Bonjorno. The plaintiff recovered a judgment based on a jury verdict. The district court set aside the judgment with respect to damages because this issue was not supported by the evidence. The district court let the verdict stand with regard to liability and ordered a new trial on damages only. Again, the jury awarded damages to the plaintiff. The district court entered a second judgment, which, after postjudgment proceedings, became the final judgment. Bonjorno, 494 U.S. at 829-31.
 
 
 33
 The Supreme Court held that postjudgment interest should run from the date of the second judgment, stating "[w]here the judgment on damages was not supported by the evidence, the damages have not been 'ascertained' in any meaningful way." Bonjorno, 494 U.S. at 836.
 
 
 34
 Imperial's situation is similar to the plaintiff's in Bonjorno. The district court entered judgment in Imperial's favor. We affirmed on the issue of liability but vacated the damage award because the district court had computed damages on the theory that Oxy was a bad faith trespasser. On remand the district court ascertained damages on the theory that Oxy was a holdover tenant in accordance with the appellate mandate. The court's second judgment was considerably less than the first judgment. The district court, rejecting Imperial's contention, did not allow postjudgment interest from the date of the original judgment.
 
 
 35
 The district court did not err. Bonjorno controls. Imperial's damages had not been "ascertained in any meaningful way" by the first judgment. Damages could not be ascertained by the first judgment because the theory underlying their computation was faulty.
 
 
 36
 AFFIRMED IN PART, REVERSED IN PART, AND REMANDED FOR THE ALLOWANCE OF A REASONABLE ATTORNEYS' FEE
 
 
 
 *
 We held this case in abeyance pending decision of Bruen v. Columbia Gas Transmission Corp., W. Va. # 6D6D 6D# , 426 S.E.2d 522 (1992), which was argued shortly after we heard argument in this case. An issue in Bruen had the potential to shed light on the computation of damages due from a gas tenant. However, the West Virginia Supreme Court of Appeals found it unnecessary to reach this issue. See Bruen, W. Va. at, 426 S.E.2d at 528